SEABOARD AIR LINE RAILWAY CO. v. D. A. DORSEY.

149 So. 759.

En Banc.

Opinion Filed November 29, 1932.

Opinion on Rehearing Filed July 27, 1933.

*Shutts & Bowen, Herbert S. Sawyer* and *L. S. Bonsteel,* for Plaintiff in Error;

*Gordon R. Broome* and *Shipp, Evans & Kline,* for Defendant in Error.

TERRELL, J.—August 6th, 1926, defendant in error executed to plaintiff in error the following instrument:

### PROPOSITION OR TENDER.

In consideration of the S. A. L. Ry. building and maintaining a passenger station and operating regular trains to and from such station, on Blocks 1 and 2 of Bohemia Park, City of Miami, Fla., I hereby agree to dedicate a strip of land 35 feet in width immediately adjoining the north boundary line of said Blocks 1 and 2 of Bohemia Park, and extending from the west line of N. W. 7th Avenue to the east line of N. W. 8th Avenue, the said S. A. L. Ry. Co. to use said strip for the purpose of receiving and discharging passengers to and from the proposed passenger station; and in the event said strip is not used continuously for the

aforesaid purposes then it shall revert to D. A. Dorsey, his heirs or assigns. It is further agreed that said passenger station will cost not less than $75,000. It is also understood and agreed that work on said station shall begin not later than September 15th, 1926. S. A. L. Ry. to pay for abstract, attorney's fees, also street improvement liens in front of said strip.

Respectfully,

D. A. Dorsey.

Witnesses:

C. H. Reeder,
K. K. Clark.

Accepted for the Seaboard Air Line Ry.
W. L. Seddon,

August 11th, 1926. Vice-Pres. S. A. L. Ry.

August 11th, 1926, plaintiff in error advised defendant in error by mail that his "proposition or tender" was accepted and on September 13th, 1926, it took charge of the *locus in quo* and commenced the construction of its passenger station as contemplated which was in due course completed at a cost in excess of $281,000.00. The thirty-five foot strip described in the "proposition or tender" was also paved at a cost of $443.50 to the plaintiff in error. Defendant in error testified that he never received the notice of acceptance of his "proposition or tender," but under the facts of this case that becomes immaterial. When the plaintiff in error took charge of the lands and made the improvements in the presence of the defendant and without his objection, every purpose of the notice of acceptance was served.

In July, 1930, defendant in error as plaintiff below instituted this action in ejectment to recover possession of his lands described in the "proposition or tender." Subsequent

to the institution of the ejectment suit defendant below, plaintiff in error here was placed in the hands of a receiver appointed by the United States District Court for the Southern District of Florida. The receiver under his order of appointment took charge of all the physical assets of the defendant, including the lands involved in this litigation. Defendant then moved to stay the action in ejectment pending the disposition of the receivership. This motion was denied and the cause came on for trial in January, 1932, resulting in a directed verdict for the plaintiff on the question of possession and the question of mesne profits was submitted to the jury which returned a verdict of $2,500 therefor. Motion for new trial was denied, final judgment was entered and this writ of error was taken thereto.

It is contended that the final judgment in ejectment was erroneous because the res was in the actual possession of the Federal Court rather than the defendant, that such a judgment should not be entered against one not in possession, and that Dorsey, the plaintiff, was estopped from asserting his right of possession in and to the lands described in the declaration.

The rule is well settled that the appointment of a receiver for the defendant does not abate an action against it nor will it bar the prosecution to judgment of such action. If the interests represented by the receiver render it necessary he may at his request be substituted by order of the Court as a party defendant and allowed to defend, but until this is done he is a stranger to the cause. It is not the duty of the plaintiff to bring him in. Alabama Terminal R. Co. v. Benns, 189 Ala. 590, 66 So. 589, St. Louis C. G. & Ft. S. Ry. Co., et al., v. Holliday, 131 Mo. 440, 33 S. W. 49, Mercantile Trust Co. v. Pittsburgh & W. R. Co., 29 Fed. 732, Decker v. Gardner, 124 N. Y. 334, 26 N. E. 814, 11 L. R. A.

480, Peck v. Jennes, 7 How. (U. S.) 612, 12 L. Ed. 841, Venner v. Denver Union Water Co., 40 Col. 90, Pac. 623, 122 A. S. R. 1036, R. C. L. 48, 53 C. J. 124, 349.

But plaintiff in error contends that this question does not involve the usual proposition incident to conflict of jurisdiction in actions *in personam* where jurisdiction is retained by the Court where suit is first brought, but that the pith of the controversy in this case is one of actual possession and not one of jurisdiction. Wabash R. Co. v. Adelbert College of the Western Reserve University, 208 U. S. 38, 28 Sup. Ct. Rep. 182, 52 L. Ed. 379, and similar cases are relied on to support this contention.

The facts in the last named case were materially different from those of the case at bar. In that case the res was taken in hand by the Federal Court to protect its decree of sale. When the State Court attempted to exercise jurisdiction over it in another action, the sale under decree of the Federal Court had effected a change in the vestiture of title. The custody of the Federal Court was for the sole purpose of protecting the rights of creditors. The receivership in the instant case had no such purpose and is therefore not ruled by the line of cases relied on by plaintiff in error:

The question of whether or not Dorsey, the plaintiff, is estopped from asserting his right of possession in and to the lands brought in question, we think must be answered in the affirmative.

The "proposition or tender" quoted elsewhere in this opinion, on being accepted, unquestionably gave to the plaintiff in error the right to take possession of and use the lands described therein continuously "for the purpose of receiving and discharging passengers to and from the proposed passenger station." A great deal is said in the briefs about

whether this "proposition or tender" amounted to a dedication, a donation, an easement or a license, but this discussion is all beside the main question. No stock words or phrases are required to constitute any of these instruments, it is only necessary that such words be employed as will show the grantor's intent.

A license is a mere permit to use the property of another. An easement implies an interest in the property used. A license may generally be revoked at the pleasure of the grantor, no matter how long continued, but the rule as to revocation does not apply when permission is granted to use property for a particular purpose, or in a certain manner and in the execution of that use, the permittee has expended large sums or incurred heavy obligations for its permanent improvement. This rule applies whether the permit be express or parole. Albrecht v. Drake Lumber Co., 67 Fla. 310, 65 So. 98, Shaw v. Proffitt, 57 Ore. 192, 109 Pac. 384, 110 Pac. 1092, Rariton Water Power Co. v. Veghte, 21 N. J. Eq. 463, text 475, Boswreth v. Nelson, 170 Ga. 279, 152 S. E. 575, Frederic v. Mayers 89 Miss., 127, 43 So. 577, Nowlin v. Whipple, 120 Ind. 596, 22 N. E. 669.

The record discloses that plaintiff in error promptly took charge of the lands and commenced the construction of the passenger station referred to in the "proposition or tender," that the said passenger station was in due course completed at a much larger sum than that named by the defendant in error, that it has been continuously used for the purposes and in the manner contemplated. That in addition to constructing said passenger station a considerable sum, to-wit: $443.50 was expended by plaintiff in error paving said lands to make them suitable for the purpose for which they were to be used, that the defendant in error sat by observing, but made no seasonable objection to any of these improve-

ments, and waited for more than three years after they were completed before he brought this action.

Under such circumstances the doctrine of equitable estoppel is peculiarly applicable and was properly invoked in the court below. · The plea raising this defense was sustained by the proof. If the plaintiff in error is not using the lands as it was given permission to do, defendant in error has right of action for damages in a court of law or for other appropriate relief.

The judgment below is accordingly reversed.

Reversed.

BUFORD, C. J., and WHITFIELD, BROWN and DAVIS, J . J., concur.

ELLIS, J., dissents.

ELLIS, J. (dissenting).—In July, 1930, D. A. Dorsey began his action of ejectment in the Circuit Court for Dade County against the Seaboard Air Line Railway Company to try the title to a strip of land thirty-five feet in width immediately adjoining the north boundary line of Blocks One and Two of Bohemia Park, and extending from the west line of Northwest Seventh Avenue to the east line of Northwest Eighth Avenue in the city of Miami, Florida.

A declaration was duly filed and the Railroad Company appeared by counsel and interposed two pleas. The first was the general issue of not guilty; the second was a plea entitled, a "defense on equitable grounds." That plea averred that on August 6, 1926, it was a railroad corporation operating its railway for public use in Florida; that at that time there was under construction a line of railway from West Palm Beach to Miami, Florida, over which the defendant had a lease; that to safely and conveniently handle passengers conveyed over the line to Miami and to render

·efficient service to the public, the defendant found it neces-
sary to construct a passenger station commensurate with
the size of the city and it was necessary to make arrange-
ments for the convenient handling of passengers to and
from the station when constructed; that a site for the erec-
tion of the station was selected and that the plaintiff, Dorsey,
was the owner of a large tract of land "adjacent and near"
to the site of the proposed station; that in lieu of con-
demning a piece of land for the aforesaid purpose of
handling its passenger business, it began negotiations with
the plaintiff, D. A. Dorsey, who, it was learned by this de-
fendant, was especially desirous of having the passenger
station located adjacent to and in the vicinity of his real
·estate, to secure control and possession of a strip of land
abutting and adjoining said proposed station site sufficient
for the aforesaid purposes; after some little negotiation, the
said plaintiff agreed to dedicate a strip of land abutting and
adjoining the proposed station site for the purpose of al-
lowing said strip of land to be used by this defendant over
which to receive and discharge passengers to and from the
proposed passenger station, and in *pursuance* of said *under-
standing, plaintiff* and *defendant* entered into an *agreement,*
in writing, in the words and figures following." (Italics
mine.)

The plea then sets out *in haec verba* the alleged agreement
in writing, in the language set out in the majority opinion,
with the exception that in the plea the date of the instru-
ment was given and the persons to whom it was addressed
which was as follows:

"August 6, 1926, Crow-Reeder-Curtis Co., 441 N. E. First·
Ave., Miami, Florida. Gentlemen." The plea also showed
the acceptance by the defendant in slightly different form
from the manner in which it appears in the opinion. The

plea shows acceptance in the following language: "Accepted for the Seaboard Air Line Ry. Aug. 11th, 1926. W. L. Seddon, Vice-Pres. S. A. L. Ry."

The plea then avers that the defendant, by virtue of the "agreement and relying thereon," took possession of the land in good faith and has "continuously and uninterruptedly remained in possession of the same and the same has been, since the erection of said passenger station, continuously, uninterruptedly and constantly used by this defendant and the public as a way of ingress and egress into and out of said passenger station."

The plea then avers the erection by the defendant of a passenger station costing approximately two hundred eighty-one thousand eight hundred and eighty-five dollars; that the defendant has continuously operated passenger trains to and from the station since January 8, 1927; that it secured an "abstract covering said strip of land" and paid for it the sum of forty-three dollars; that it has paid all attorney's fees "connected with said transaction"; "that it expended large sums of money in paving and putting said strip of land in a safe condition for the purpose of receiving and discharging passengers to and from said passenger station, to-wit: the sum of approximately Four Hundred Fifty Dollars ($450.00); thereby not only benefitting this Defendant but also benefitting the plaintiff's property abutting said strip of land."

The plea also avers that during all the time the defendant was expending the money the plaintiff had actual knowledge and notice of the same and "stood by, remained silent and acquiesced in the acts and doings of this defendant and for all these years has not objected to the use of said strip of land by this defendant"; that since the defendant took possession of the land it has never used it "for any other

purpose than that for which it was agreed to be dedicated"; that the land is essential for the safe, convenient and proper handling of the defendant's passenger business into and out of Miami; that the title to the land is in the plaintiff; that the defendant has made a demand on the plaintiff for a "deed of dedication" to the land "in accordance with the terms, conditions, and stipulations of the aforesaid agreement entered into by and between the plaintiff and this defendant, and the said plaintiff refused to execute said deed."

The plea avers that by reason of the facts set out in the plea the defendant is entitled to "specific performance of the aforesaid agreement and a perpetual injunction against the plaintiff, so long as it performs its contract, as it is now doing, enjoining and restraining him from impeding, hindering, obstructing, and interfering with it in the handling of its and the public's business, which it is in duty bound to do, in a safe, convenient and efficient manner, and its possession of said strip of land." It is also averred that the defendant in carrying out its promises "and in the expenditure of the sums of money, as aforesaid" was "induced to do so by reason of said agreement and that it did so in good faith and in reliance upon said agreement made and entered into by the plaintiff"; that the plaintiff is therefore estopped from asserting any claim or right to the possession of the said strip of land agreed to be "dedicated."

A full statement of the averments of the plea is given in order that if it possesses any imperfections as an equitable defense they may be readily seen.

The plea of not guilty put in issue the title to the land, or, in case of an adverse claimant, the adverse claim of the defendant, Sec. 5044 C. G. L. But an inchoate or equitable right which might be available in equity cannot avail the

defendant as against the legal title. See Petty v. Mays, 19 Fla. 652.

Section 4301 C. G. L. 1927 modified the rule at common law in ejectment and authorizes an equitable plea. See Osceola Fertilizer Co. v. Beville, 86 Fla. 479, 98 South. Rep. 354. Such plea, however, must contain averments of fact which if alleged in a bill in equity would entitle the defendant to relief against a judgment if obtained at law. Osceola Fertilizer Co. v. Beville, *supra*, Sec. 4301 C. G. L. 1927; Bacon v. Green, 36 Fla. 325, 18 South. Rep. 870.

The purpose of the statute authorizing pleadings on equitable grounds is to facilitate the administration of justice in courts that can deal with such equitable pleadings. See Hobbs v. Chamberlain, 55 Fla. 661, 45 South. Rep. 988.

But equitable estoppel may be proved under the general issue. Kelsey v. Lake Childs Co., 93 Fla. 743, 112 South. Rep. 887; Blackiston v. Smith, 73 Fla. 25, 73 South Rep. 839.

If the purpose of the second plea was merely to set up an equitable estoppel it was not good as an equitable plea because defenses available under the general issue may not be set up by equitable pleas. Robeson v. First Nat., Bank, 42 Fla. 504, 29 South. Rep. 325; Marshall v. Bumby, 25 Fla. 619, 6 South. Rep. 480; Pensacola Lumber Co. v. Sutherland, 50 Fla. 244, 39 South. Rep. 789; Spratt v. Price, 18 Fla. 289.

An equitable plea is purely defensive and it is never admissible when it raises issues with which the common law side of the court is competent to deal. Pensacola Lumber Co. v. Sutherland, *supra*.

I do not regard the second plea therefore as attempting to set up an equitable estoppel, nor indeed do its averments set up such a defense.

Mr. Justice WESTCOTT, in Neal v. Gregory, 19 Fla. 356, speaking for the court, said "no estoppel can spring from silence or acquiescence unless there are some special circumstances which make it a duty to speak, and the maxim of the law that illustrates the doctrine is 'that he who is silent when conscience requires him to speak shall be debarred from speaking when conscience requires him to be silent.' Among the requirements to give effective operation to an equitable estoppel of this character is acquaintance with his title upon the part of the party sought to be estopped, and that for the reason that it would be the grossest injustice to construe ignorance or misapprehension of the true nature or existence of a right into a forfeiture of the power to enforce it. * * * Again, it should also be shown that the conduct of the party sought to be estopped did in fact affect the action of the purchaser; that it was to some extent the motive and inducement for his action. * * * It is also true that when the actual state of the title can be readily ascertained by reference to the record, and the purchaser neglects to avail himself of the information which a simple examination of the record affords, silence unaccompanied by fraud will not operate as peremptory estoppel."

It cannot be asserted with certainty that the plea sets up a right in the defendant Company to a purchase of the strip of land, or any estate in it, or an easement of ingress and egress or a dedication to the public through the Corporation as a public utility. As a dedication to the public the plea is clearly ineffective because there is no averment that it was ever accepted by the public or that its use makes it a matter of public consequence and affects the community at large, or that it was dedicated as a public street or high-

way. Raymond v. Whitcomb, 66 Fla. 19, 62 South. Rep. 832.

In which case a distinction was made between a dedication of a strip of land as a street to the public use and a private easement of egress and ingress over the strip. Kirkland v. City of Tampa, 75 Fla. 271, 78 South. Rep. 17. The plea in this case affirmatively shows that Dorsey did not intend to dedicate the strip to the use of the public as a street or highway because in the instrument called a "proposition or tender" and incorporated in the plea the condition was imposed that the Company would pay for the *"street improvement liens* in *front* of said strip." (Italics mine.) There could be no liens upon the strip for a *street* improvement in front of it if the strip itself was a public street or highway or dedicated by the owner and accepted as such by the public.

The instrument shows no present purpose to dedicate the strip as a public street. It was in its most liberal and favorable aspect to the Company a mere proposition to a third person, Crow-Reeder-Curtis Company, to dedicate the strip to use for the "purpose of receiving and discharging passengers to and from the proposed passenger station" and that on condition that the Corporation defendant would comply with certain conditions with all of which the plea fails to aver that the Company complied.

The plea cannot be considered as tendering an equitable defense based upon the right to a specific performance of a contract between the Railroad Corporation and Dorsey to convey to the former an easement of ingress or egress over the strip of land because the plea avers none of the elements of a contract between the two parties. It does not aver that Crow-Reeder-Curtis Company was the defendant's agent acting for it in this behalf. It does aver that the

plaintiff Dorsey and the defendant entered into the agreement in writing set out in the plea. Even if that language is construed to mean that Dorsey's proposition was made to the Company, or to Crow-Reeder-Curtis Company as its agent and by that Company delivered with Dorsey's authority to the Railroad Company defendant and by the latter accepted, it fails to aver compliance with all the conditions imposed; nor is the proposition definite as to the length of time the private easement to the railroad was to continue, nor that the Company was to purchase it. The plea merely avers that it is entitled to a permanent easement upon performance of all conditions named in the proposition, but fails to aver full performance.

It is incredible that a railroad corporation, constructing its lines of road into a great city like Miami and having upon it the duty of erecting a passenger station commensurate with the size of the city for the public safety and service and to that end having selected and acquired a site for the station, would not have erected the station had it not been for the plaintiff's proposition. It cannot be credibly asserted that the Company was misled to its injury in that particular by the plaintiff's proposition. Taking possession of the strip was to its own advantage, while paving it for more convenient use was not required by a proposition and was for its own advantage as likewise were the payments for the "abstract" and attorney's fees by which before taking possession of the property and improving it by paving it the Company became advised as to its ownership and by that act avoided the greater expense of condemnation proceedings under the provisions of the statute, if indeed the strip of land in question may be considered under the averments of the plea as "required facilities"

for its station or for the reception, retention, transfer and forwarding of commerce. Sec. 6317 C. G. L. 1927.

The plea affirmatively shows that the Company itself was in default under the terms of the alleged agreement and therefore not entitled to specific performance. See Pensacola Gas Co. v. Provisional Municipality of Pensacola, 33 Fla. 322, 14 South. Rep. 826.

The plea shows no price agreed upon between the parties and no detriment to the defendant. The claim for specific performance seems to rest upon the proposition that because the Company erected a station upon a site previously selected and acquired by it, which, as the plea avers, it was its duty to the public to do, and that the plaintiff's property adjacent thereto would be materially benefitted thereby, it is entitled to a conveyance to it of an easement over the strip of land owned by the plaintiff because the Company had taken possession of that strip, paved it and used it for its own convenience and obtained and paid for an abstract of title relating to it. As specific performance cannot be demanded of right but is granted of grace and rests in discretion, I am of the opinion that the trial court was not in error in holding that the plea presented no equitable defense upon the basis of a right to specific performance of the alleged agreement to convey to the defendant a permanent easement of ingress and egress over the strip of land in question. See Pensacola Gas Co. v. Provisional Municipality of Pensacola, *supra;* Knox v. Spratt, 23 Fla. 64, 6 South Rep. 924; Nobles v. L'Engle, 61 Fla. 696, 55 South. Rep. 839; Gaskins v. Byrd, 66 Fla. 452, 63 South. Rep. 824; Murphy v. Hohne, 73 Fla. 803, 74 South. Rep. 973; Dixie Naval Stores Co. v. German-American Lumber Co., 76 Fla. 339, 79 South. Rep. 836.

The only question, in my opinion, which the plea presents

is whether the action of the plaintiff in offering to dedicate the strip of land, a proposition made to a private corporation, Crow-Reeder-Curtis Company, upon condition that the defendant Railroad Company would do certain things and which proposition the Railroad Company accepted and took possession of the strip of land and paved it for its own convenience but did not comply with all the conditions imposed by the plaintiff, operates as an equitable estoppel against the plaintiff from resisting the assertion by the railroad as a public agency that the strip of land has been dedicated by the plaintiff as a way of ingress and egress for the convenience of the public to and from the Railroad Company's passenger station at Miami.

The proposition, considered as an offer to the Railroad Company to give a private easement of ingress and egress over the strip of land, is not supported by the plea as it is not averred that the Company complied with the conditions imposed; considered as an offer to the public as a street, park or passageway, the plea is insufficient to show acceptance by the public either officially or by public user. It has already been shown that the proposition cannot be considered as such an offer to sell or give an easement to the Company as under the averments of the plea would support specific performance of the contract.

Then in what light may the averments of the plea be considered as setting up an equitable estoppel to the owner from asserting his right to the possession of the strip of land as against the Company's use of it as a public service corporation for ingress and egress to its station? I am unable to perceive that in the circumstances of the transaction, as averred in the plea or shown by the evidence to support an equitable estoppel, that any of the elements of such an estoppel exist. If the Railroad Company could

accept a dedication of the strip of land it must be because it had the right to acquire it by exercise of the power of eminent domain because the two rights are inseparable and inevitable concomitants of each other. If the property is taken at all in the circumstances it must be for a public use and not a private one. To be able to take it for a public use it must appear that the Company could have exercised the right to acquire it for that purpose by eminent domain. See Venable v. The Wabash Western R. Co., 112 Mo. 103, 20 S. W. Rep. 493, 18 L. R. A 68.

Neither the averments of the plea nor the evidence submitted tend to show that such right may have been exercised by the Company to acquire a facility required for the reception, transfer and forwarding of commerce. Sec. 6317 C. G. L., *supra.*

If the Company could have exercised the right of eminent domain the owner would have been entitled to reasonable compensation for his property and thus *consent* of the owner, which by condemnation of the land is compelled, would be obtained. The consent of the owner in this case, however, is asserted by his proposition to dedicate the strip for the use to which the Company may have condemned it by eminent domain, but that consent by dedication is not shown, only a proposition to do so upon the fulfillment by the Company of certain conditions which neither the averments of the plea nor the evidence show were met by the Company.

The rule is universally recognized that a railroad corporation may not acquire title to or easement in land by common law dedication. See Lake Erie & W. R. Co. v. Whitman, 155 Ill. 514, 40 N. E. Rep. 1014.

I do not find any analogy between the cases cited in the

majority opinion and the instant case insofar as the question of estoppel by equity is involved.

One may be estopped from asserting his title to land where he, the owner, has permitted another to enter upon it and use it and who "has expended large sums or incurred heavy obligations for its permanent improvement," but no such condition exists in this case. Permission was granted for its use by the Company on conditions which were not observed. The defendant insists upon a "dedication" to public use which it as a railroad could accept, or that it has an equitable right to specific performance of a contract which did not exist, nor with the proposed terms contained in the proposition was there full compliance.

The evidence submitted as to an equitable estoppel was weaker than the averments of the plea.

I am therefore of the opinion that the judgment should be affirmed.

### On Petition for Rehearing.

Per Curiam.—The petition for rehearing apparently misconstrues the effect of the opinion of the Court and what we decided therein. All we decided was that the "proposition of tender" quoted in the opinion, when accepted by the vendee, gave the plaintiff in error the right to take possession of and use the lands described therein continuously "for the purpose of receiving and discharging passengers to and from the proposed passenger station" and that when it ceased or failed to use them for that purpose defendant in error had its right of action in a court of law or for any other appropriate relief.

The petition for rehearing has been carefully examined and we see no cause to modify or change our former holding. The rehearing is therefore denied.

Rehearing denied.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

ELLIS, J., dissents.