605 So.2d 110 (1992)
Ray TATUM, Appellant,
v.
Robert M. DANCE, Appellee.
No. 91-1098.
District Court of Appeal of Florida, Fifth District.
August 14, 1992.
Rehearing Denied October 1, 1992.
*111 John V. Baum of Panico & Baum, Maitland, for appellant.
John F. Bennett of Fishback, Dominick, Bennett, Stepter & Ardaman, Orlando, for appellee.
GRIFFIN, Judge.
In this foreclosure action, the mortgagee, Ray Tatum, has appealed the order of the lower court holding that Robert Dance, the mortgagor, is entitled to an irrevocable license for drainage onto the mortgaged property. We affirm.
In 1975, the southern portion (parcel A) of a tract of unimproved land in Seminole County was bought by Dance from Broleman and Rapp to construct an automobile dealership. A borrow pit was located on the remaining adjacent portion (parcel B) of the tract owned by Broleman and Rapp. Dance testified that he had bought the property as a "package deal." Rapp, who was also an architect, had offered him both the design of the dealership and the land on which to build it. The design produced by Rapp provided for drainage into the borrow pit on parcel B. In 1976, Dance built the dealership using Rapp's design. As built, almost all of parcel A was paved, rendering it incapable of on-site drainage. Surface water flowed into a central drain in the pavement through culverts (constructed by Dance) to the borrow pit on parcel B. Dance never obtained a drainage easement.
In 1984, Broleman and Rapp sold parcel B to Tatum. In 1987, Tatum sold parcel B to Dance, taking back a purchase money note and mortgage. Dance ultimately defaulted on the note and Tatum brought the foreclosure proceeding below. Dance sought an order from the trial court recognizing his right to drainage onto parcel B.
Evidence was presented by Dance that his purchase of parcel A, construction of the car dealership and installation of its drainage system leading to the borrow pit on parcel B were all done in reliance on an oral drainage license from Rapp. Dance established that approximately $88,000 would be required to redesign and construct drainage on his own parcel. After hearing the evidence, the lower court held the oral drainage license given by Rapp to Dance became irrevocable. The trial court further held that because Dance had continually used the drainage system and his use of it would have been apparent to Tatum by reasonable inspection of parcel B, Tatum was also bound by the irrevocable license. Finally, the court found: "Since a license is a personal right to use land rather than interest in land, the doctrine of merger of estates and land does not apply and, furthermore, since this license arose through the application of principles of equity, the equities command that this irrevocable license survive the foreclosure of [Tatum's] mortgage."
In finding an irrevocable license in favor of Dance, the trial court relied upon our opinion in Dotson v. Wolfe, 391 So.2d 757 (Fla. 5th DCA 1980). In Dotson we discussed the analytical difficulties inherent in *112 the distinction between an easement and a license, and said:
A license is distinguished from an easement in that a license is merely a personal right to use the property of another for a specific purpose, is not an interest in the land and, therefore, may not be assigned or conveyed. Burdine v. Sewell, supra [92 Fla. 375, 109 So. 648 (Fla. 1926)]; Jenkins v. Lykes, 19 Fla. 148, 45 Am.R. 19 (1882); The Florida Bar, Florida Real Property Practice I § 12.14 (1965); 1A Thompson on Real Property §§ 216, 217 (1980). As a personal right, a license usually may be revoked at will by the licensor. The Florida Bar, Florida Real Property Practice I § 12.14 (1965); 1 Boyer, Florida Real Estate Transactions § 23.08 (1979).
There is a split among the jurisdictions as to whether a license may ever become irrevocable. Rerick v. Kern, 14 Serg. & R (Pa.) 267, 16 Am.Dec. 497 (1826); 1A Thompson on Real Property § 225 (1980). Florida has sided with those jurisdictions which have allowed a license to become irrevocable to escape an inequitable situation which might be created by the requirements of the statute of frauds, or where money has been spent in reliance on a license. Seaboard Air Line Ry. Co. v. Dorsey, 111 Fla. 22, 149 So. 759 (1933) [sic]; Albrecht v. Drake Lumber Co., 67 Fla. 310, 65 So. 98 (1914); The Florida Bar, Florida Real Property Practice I § 12.14 (1965).
Id. at 759.
In the Albrecht case, which we cited in Dotson, the Florida Supreme Court adopted the majority view that a parol license, without consideration, to construct a permanent structure upon the land of the licensor for the benefit of the licensee cannot be revoked at the pleasure of the licensor where the licensee, in reliance on the license, has expended substantial sums on improvements. Equity will estop the licensor from exercising his right to revoke the license. Albrecht v. Drake Lumber Co., 67 Fla. 310, 65 So. 98, 100 (1914). See generally 3 Boyer, Florida Real Estate Transactions §§ 110.31[3][b][i], -.32 (1992). Further, a subsequent vendee having notice of the licensee's use at the time of purchase takes the land burdened with the license, and has no right to object to its presence or to sue for or recover damages therefor. Albrecht, 65 So. at 100. However, the Albrecht court further observed that such an irrevocable license "becomes an easement". Id.
The threshold question we must consider is whether Dotson, Dorsey and Albrecht were overruled sub silentio in Tortoise Island Communities, Inc. v. Moorings Ass'n, Inc., 489 So.2d 22 (Fla. 1986). Tortoise Island involved a claimed implied easement to use an access canal based upon representations made to purchasers of lots at the time of the sale; it did not involve the expenditure of funds or construction of improvements in reliance upon a license. The Tortoise Island court ruled, in essence, that implied easements can arise only from (1) an implication arising from the language in a duly executed writing or (2) a factual situation giving rise to the creation of a way of necessity as a matter of law. This holding does not eliminate irrevocable licenses from Florida jurisprudence, however. The irrevocable license cases were nowhere mentioned in Tortoise Island. At most, Tortoise Island precludes the creation of an implied easement out of an irrevocable license.[1]
Although an irrevocable license may be the "functional equivalent" of an easement by estoppel, they are not the same thing.[2] Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses *113 in Land, paragraph 10.06[2] at 10-18 (1988). They are different in origin, scope and function.[3] The equitable concerns that led to the Dorsey, Albrecht and Dotson decisions are firmly rooted in Florida law and there is no reason to assume this remedy was withdrawn by implication in Tortoise Island. The "irrevocable license" is a distinct remedial concept recognized historically and currently in many jurisdictions, which, like Florida, provide no statutory remedy.[4] It only arises under certain very narrow circumstances and should be applied only to the extent required to prevent inequity. The duration of irrevocable licenses should be limited to the time necessary to protect the reliance investment of the licensee. See Bruce & Ely, supra paragraph 10.06[2][b] at 10-23 and cases cited therein; V Restatement of Property § 519(4), cmt. e (1944); Eliopulos v. Kondo Farms, Inc., 102 Idaho 915, 643 P.2d 1085 (Ct.App. 1982). The irrevocable license gives equity a broad range of remedies short of creating an easement servitude in real property.
In this case, the licensor designed and permitted construction of the drainage system for Dance's car dealership onto his adjacent parcel. The configuration and construction of the entire dealership depended on this drainage design. This case does, therefore, represent the very unusual circumstance where a court sitting in equity could appropriately conclude that Dance's drainage license is irrevocable even as against the vendee of the licensor.[5] Although we might not agree that equity required an irrevocable license as broad as the one fashioned by the trial court, we cannot conclude the court abused its equitable powers, save in one respect. The judgment provides that the license inures not only to the benefit of Dance but to his successors in interest. A license is a personal right, however, and cannot be assigned or conveyed. Although a license may be enforced against a successor of the licensor for equitable reasons, as referenced above, there is no similar basis to allow the licensee to transfer the license. Cf. Seaboard Air Line Ry. Co. v. Dorsey, 111 Fla. 22, 39, 149 So. 759, 765 (1932). Accordingly, we affirm the order of the lower court, in part, but reverse in part and remand with instructions to enter a judgment consistent with this opinion. We also certify the following question, which we deem to be of great public importance, to the Florida Supreme Court:
WHETHER, IN LIGHT OF MOORINGS ASSOCIATION, INC. V. TORTOISE ISLAND COMMUNITIES, 460 So.2d 961 (FLA. 5TH DCA 1984), DECISION QUASHED, 489 So.2d 22 (FLA. 1986) (DISSENT APPROVED), THE STATEMENT IN ALBRECHT V. DRAKE LUMBER CO., 67 FLA. 310, 65 SO. 98 (1914), TO THE EFFECT THAT AN IRREVOCABLE LICENSE BECOMES AN EASEMENT BASED ON EQUITABLE ESTOPPEL, MEANS THAT AN IRREVOCABLE LICENSE CAN NO LONGER EXIST IN FLORIDA.
AFFIRMED in part; REVERSED in part; REMANDED.
COBB J., concurs.
W. SHARP, J., concurs specially with opinion.
*114 W. SHARP, Judge, concurring specially.
I disagree with the view expressed in the majority opinion that Tortoise Island Communities, Inc. v. Moorings Association, Inc., 489 So.2d 22 (Fla. 1986), "ruled, in essence, that implied easements can arise only from 1) an implication arising from the language in a duly executed writing, or 2) a factual situation giving rise to the creation of a way of necessity as a matter of law." This case is one where such an easement may (in my view) still arise despite Tortoise Island.
The right to pipe water over another person's land to benefit the owner's adjacent land is traditionally classed as an easement as opposed to a license. Indeed, licenses may involve a broader category of uses than easements. But I see little point in making the outcome of this case turn solely on a strained analysis of whether what is involved here is an easement or a license. In my view, it began as an oral license, ended as an easement, and should be protected from extinguishment in the foreclosure action because of Albrecht v. Drake Lumber Co., 67 Fla. 310, 65 So. 98 (1914) and the equities established in this case.
The equities are clearly with appellee, Dance, concerning his right to continued usage of the drainage easement running from his improved parcel over appellant's unimproved parcel, to the borrow pit located there. Dance presented testimony and evidence (which was believed by the trial judge) that he purchased his parcel from the common owner of both parcels. The prior owner induced him to purchase his parcel by assuring him it could be improved as a car dealership (which was Dance's intent), because of available drainage over the remaining parcel to the borrow pit. The prior owner assisted Dance in the construction of the drainage pipe, and even prepared the plans for it.
Dance then expended $250,000 to build his dealership. Most of his parcel is now paved. It would not meet county requirements if drainage over the appellant's parcel were not available. Some $88,000 would be required to tear up the pavement on Dance's parcel to handle drainage on his own parcel. In addition, he would lose valuable land for the dealership for which no damage figure was provided.
In 1984 the servient parcel was sold by Dance's common grantor to appellant, Tatum. Tatum testified he was unaware of the drainage pipe extending over his parcel to the borrow pit and the actual flow of water from Dance's parcel to the borrow pit. Dance testified it was open and obvious to anyone who looked at the land.
Tatum sold his parcel (still undeveloped) to Dance in 1987, who gave Tatum a purchase money mortgage on the property. The drainage pipe continued to be used to benefit the improved parcel. But nothing was said by Tatum to Dance about the drainage pipe until Tatum foreclosed his mortgage on his parcel and re-assumed its ownership in 1991. He then opposed Dance's motion in the trial court (handling the foreclosure) to clarify that Dance's drainage easement would survive the foreclosure.
I agree that it should. In my view, although Dance's drainage easement commenced existence as an express oral license, it became an easement, which was irrevocable and which bound all successive owners of the servient parcel (Tatum) who had notice. Although title to the dominant and servient tenements joined in Dance for a time and may have "merged" the easement,[1] when Dance lost title to Tatum, via foreclosure, an implied reservation of easement was properly established here.[2] The trial court necessarily found in this case that Tatum had or should have had notice of Dance's drainage rights.
In Albrecht, the Florida Supreme Court held, in a factually similar case:
[A] parol license, ... to construct upon the land of the licensor any permanent structure, such as an irrigation ditch, ... *115 cannot be revoked at the licensor's pleasure, where the licensee, in consequence of the license, at great cost has erected his mill or constructed his railroad... . An express oral license, becoming irrevocable by execution, by expenditures in permanent improvements in reliance thereon, inuring to the benefit of the licensor, if relating to the use or occupation of real estate, becomes an easement. The licensor's attempted revocation of the express license, which has been executed by expenditures in permanent improvements by the licensee to the knowledge of the licensor, is a fraud, against which equity will relieve by estoppel.
65 So. at 100.
I would distinguish this case from Judge Cowart's dissenting opinion in Moorings Association, Inc. v. Tortoise Island Communities, 460 So.2d 961 (Fla. 5th DCA 1984), which dissent was adopted by the Florida Supreme Court in Tortoise Island Communities, Inc. v. Moorings, Inc., 489 So.2d 22 (Fla. 1986), because in that case the parties claiming an access easement had not built permanent improvements across the servient tenement as in Albrecht (a railroad) and as in this case (a drainage pipe). Nor did plaintiffs allege in Tortoise Island the construction at "great cost" of facilities on the dominant parcel (in Albrecht a saw mill and here a car dealership) in reliance on the continued existence of the easement or license.
Judge Cowart's analysis in Tortoise Island which excluded the possibility of an easement arising in that case, justified the narrowing of circumstances from which an easement could arise, absent a writing, to those which could satisfy the statute of frauds. § 725.01, Fla. Stat. (1951); Moorings Association, Inc. v. Tortoise Island Communities, 460 So.2d at 970. Since there was no writing in that case, he concluded that only an easement of "necessity" would suffice. But another way to satisfy the statute of frauds is by performance.[3] In Albrecht, supra, the court held that the oral grant of an easement became permanent by "execution, by expenditures in permanent improvements" or to rephrase the court, by performance.
I conclude that this mode of creating easements survived Tortoise Island (if that decision is properly limited to its facts or pleadings) and that this mode is clearly applicable to this case. Here, Dance and the prior owner of Tatum's parcel planned and built the drainage pipe and easement, and Dance purchased his parcel and built his dealership with the knowledge and consent of the licensor in reliance on his continued drainage rights. These facts (found by the trial judge as sufficient to establish an irrevocable license) are sufficient to create an easement under Albrecht, which survives Tortoise Island because it was accomplished by performance, thereby removing it from the perils of the statute of frauds.[4]
For these reasons, I suggest the certified question should be rephrased as follows:
WHETHER MOORINGS ASSOCIATION, INC. V. TORTOISE ISLAND COMMUNITIES, 460 So.2d 961 (FLA. 5TH DCA 1984), DECISION QUASHED, 489 So.2d 22 (FLA. 1986) (DISSENT APPROVED), EXTINGUISHES THE CREATION OF ORALLY CREATED EASEMENT RIGHTS IN ALL SITUATIONS OTHER THAN THOSE CREATED BY "NECESSITY" OR WHETHER AN EASEMENT CAN STILL BE CREATED BY EXECUTION, EXPENDITURES IN IMPROVEMENTS, AND RELIANCE ON AN ORAL LICENSE GIVEN BY THE SERVIENT LANDOWNER AS IN ALBRECHT V. DRAKE LUMBER CO., 67 FLA. 310, 65 SO. 98 (1914).
NOTES
[1] Judge Sharp suggests that we have conceded Tortoise Island precludes creation of an implied easement but we do no such thing. As we have pointed out, Tortoise Island did not involve an Albrecht type easement. However, this case was decided by the trial court on the basis of an irrevocable license; no easement was found. Our task is to determine whether the trial court's application of an irrevocable license to the facts of this case is sustainable.
[2] See also Susan French, Servitudes Reform and the New Restatement of Property: Creation Doctrines and Structural Simplification, 73 Cornell L.Rev. 928, 950 (1988).
[3] In her article on servitudes reform, supra note 2, Susan French suggests eliminating licenses entirely in favor of "easement exceptions to the Statute of Frauds" and "construction of the duration of easements."
[4] See Noronha v. Stewart, 199 Cal. App.3d 485, 245 Cal. Rptr. 94 (1988); Eliopulos v. Kondo Farms, Inc., 102 Idaho 915, 643 P.2d 1085 (Ct. App. 1982); Mercer v. Sturm, 10 Ill. App.3d 65, 293 N.E.2d 457 (1973); Eppling v. Seuntjens, 254 Iowa 396, 117 N.W.2d 820 (1962); Hermann v. Lynnbrook Land Co., 806 S.W.2d 128 (Mo. Ct. App. 1991); Mund v. English, 69 Or. App. 289, 684 P.2d 1248 (1984); Dailey's Chevrolet, Inc. v. Worster Realties, Inc., 312 Pa.Super. 275, 458 A.2d 956 (1983); Haines v. Minnock Const. Co., 289 Pa.Super. 209, 433 A.2d 30 (1981); Guilbault v. Bowley, 146 Vt. 39, 498 A.2d 1033 (1985); see generally 3 Richard R. Powell, The Law of Real Property, § 429 (1992).
[5] Albrecht, 65 So. 98; Eppling, 117 N.W.2d 820; Dailey's, 458 A.2d 956; Guilbault, 498 A.2d 1033; Jon W. Bruce & James W. Ely, The Law of Easements and Licenses in Land, paragraph 10.06[2][b] at 10-23 and cases cited therein.
[1] Lacy v. Seegers, 445 So.2d 400 (Fla. 5th DCA 1984); 25 Am.Jur.2d Easements § 108 (1966).
[2] See Williams Island Country Club, Inc. v. San Simeon at the California Club, Ltd., 454 So.2d 23 (Fla. 3d DCA 1984).
[3] See Carson v. Tanner, 101 So.2d 811 (Fla. 1958).
[4] See Brown v. Phillips, 330 So.2d 510 (Fla. 2d DCA 1976); S. Lemel, Inc. v. 27th Avenue Farmers Market, Inc., 126 So.2d 167 (Fla. 3d DCA), cert. denied, 133 So.2d 322 (Fla. 1961).