3 P.3d 680

2000-NMCA-048

**TARIN'S, INC., Plaintiff–Appellant,**

v.

**Bob TINLEY, Investment Company of the Southwest, and Advanced Mechanical Inc., d/b/a Total Service Company, Defendants–Appellees.**

**No. 19,945.**

Court of Appeals of New Mexico.

Nov. 3, 1999.

188

John B. Speer, Albuquerque, for Appellant.

Lester C. Cannain, Albuquerque, for Appellee Advanced Mechanical, Inc.

Richard D. Barish, Albuquerque, for Appellees Investment Company of the Southwest, Inc. and Bob Tinley.

## OPINION

BUSTAMANTE, Judge.

{1}  Plaintiff Tarin's, Inc. (Tarin), appeals the dismissal of its suit against Defendants. Tarin argues that its suit against Advanced Mechanical, Inc., doing business as Total Service Company (Advanced), should not have been dismissed because it was a third-party beneficiary of the contract between Advanced as subcontractor and the general contractor.  Tarin also argues that Investment Company of the Southwest (ICSW), the closely-held corporation of Bob Tinley (Tinley), and Tinley individually, should not have been dismissed as defendants because ICSW and Tinley improperly revoked a license they granted to Tarin to draw utilities from connections to their property.  We reverse.

{2}  Before discussing the case in more detail, we address a motion pending before this Court.  After Tarin filed its appeal, ICSW and Tinley filed a motion to

dismiss the appeal as to them for lack of a final order. The basis of the motion was the district court's failure to rule on a counterclaim ICSW included in its answer to Tarin's complaint. Nowhere in the district court's judgment is there any mention of the counterclaim. We therefore grant the motion and dismiss the appeal as to ICSW only. *See Alcala v. St. Francis Gardens,* 116 N.M. 510, 511, 864 P.2d 326, 327 (Ct.App.1993) (indicating judgment is not final unless "all issues of law and of fact necessary to be determined have been determined, and the case has been completely disposed of to the extent the court has power to dispose of it"). We nonetheless refer to ICSW in our discussion because our disposition may affect ICSW on remand.

*FACTS*

{3} Tarin operates a dry cleaning and tuxedo rental business in northeast Albuquerque. Early in 1995, Tarin moved its business to a new location adjacent to the building where it had been a tenant of Defendants ICSW and Tinley. Tarin hired Defendant R.L. Encinio (Encinio) to serve as general contractor to alter and prepare the new building to meet Tarin's needs. Encinio, in turn, hired Defendants Advanced and On Line Electric, Inc. (On Line), as subcontractors, to install and upgrade the gas and electrical connections to the new building.

{4} The contractors apparently performed most of the work to Tarin's satisfaction. There were, however, problems with the electrical and gas connections. Rather than establishing a new electrical connection for Tarin's building, On Line improperly connected Tarin's electricity to the electric meter on the adjacent building, which Tarin previously rented from ICSW and Tinley. Similarly, Advanced connected Tarin's gas to the meter on ICSW's building instead of installing an independent gas source for Tarin. It is unclear from the record whether Tarin knew the connections were improper at the time of installation. It is also unclear whether Tinley was aware of or objected to the connections. And there is no indication in the record what the billing arrangements were for the connections. Tarin used the improper connections for approximately two years without problem or incident.

{5} On May 31, 1997, Tarin's boiler began malfunctioning. He hired a boiler service to diagnose the problem and learned that Tinley had shut off the gas to Tarin's building at the meter. Tinley would not allow Tarin to reconnect to the meter, so Tarin hired a contractor to install a new gas line. Tarin lost two days of business as a result of the problem with its boiler and the work to correct the gas connection.

{6} About a month later, Tarin lost electricity to its business when Tinley shut off the power supply and locked the switch. To rectify the problem, Tarin rented a mobile generator, had Public Service Company of New Mexico install a pole and equip it with transformers, and hired a contractor to install new electrical connections between Tarin's buildings and the new transformers. Tarin was forced to close its business for one day while work was being done to correct the problems with its electrical service.

{7} Shortly after correcting its utility connections, Tarin filed a complaint against Tinley, ICSW, Encinio, Advanced, and On Line, seeking damages for interruption of its business and for the costs of the new service. Advanced filed an answer denying most of Tarin's allegations and asserting that the complaint failed to state a cause of action against it because Tarin was not in privity of contract with Advanced. Advanced then filed a motion to dismiss the complaint as to it because of the lack of privity between it and Tarin. Tinley also answered, but before he did the district court heard argument on Advanced's motion to dismiss. The court granted the motion but gave Tarin ten days to file an amended complaint.

{8} Tarin's first amended complaint was substantially similar to the original complaint, except that it sought to explain more fully the relationship between Advanced and Encinio and specifically alleged that Tarin was a third-party beneficiary of the contract between Advanced and Encinio. Once again, Advanced filed an answer and a motion to dismiss, arguing that Tarin failed to make factual arguments to support a third-party beneficiary claim. ICSW and Tinley each

filed nearly identical motions to dismiss and for sanctions, arguing in part that neither had a duty to allow Tarin to continue to use the improper utility connections or to notify Tarin of the possibility that his utility service would be cut off. The district court ordered the first amended complaint dismissed and gave Tarin thirty days to file another amended complaint.

{9} Three days after the district court entered its order dismissing Tarin's complaint, Tarin filed a response to Tinley's motion to dismiss. Tarin then filed a second amended complaint. This complaint was largely unchanged from the first amended complaint (and in turn from the original complaint). As had become the pattern by this point in the litigation, Advanced filed an answer and a motion to dismiss the complaint. Tinley and ICSW (jointly this time) filed a motion to dismiss or in the alternative for summary judgment and for sanctions. Tinley and ICSW also jointly filed an answer in which, as noted, ICSW counterclaimed against Tarin and both ICSW and Tinley sought to enjoin Tarin from parking its vehicles so as to obstruct an easement of ingress and egress that borders their respective lots.

{10} After a hearing, the district court ordered that the second amended complaint be dismissed with prejudice as to Advanced and that ICSW and Tinley be dismissed with prejudice as defendants. Tarin appeals that order. (We note that neither Encinio nor On Line ever answered any of the complaints—nor, apparently, did Tarin seek default judgments against either—thus, neither is a party to this appeal.)

## DISCUSSION

*Advanced's Motion to Dismiss*

■ {11} In its motion to dismiss the second amended complaint, Advanced admitted that it entered into an oral contract with Encinio to perform certain work on Tarin's building but argued that the complaint failed to state a claim against it because Tarin was neither in privity of contract with Advanced nor a third-party beneficiary of the contract between Advanced and Encinio. A motion to dismiss tests the legal sufficiency of the complaint. *See Kirkpatrick v. Introspect Healthcare Corp.*, 114 N.M. 706, 709, 845 P.2d 800,

803 (1992). "A motion to dismiss should be granted only when it appears that the plaintiff is not entitled to recover under any facts provable under the complaint." *Id.* We treat all of the complaint's well-pleaded allegations as true but disregard conclusions of law and unwarranted factual deductions. *See Saenz v.. Morris,* 106 N.M. 530, 531, 746 P.2d 159, 160 (Ct.App.1987).

■ {12} "Ordinarily, the obligations arising out of a contract are due only to those with whom it was made; a contract cannot be enforced by a person who is not a party to it or in privity with it ...." 17A Am.Jur.2d *Contracts* § 425 (1991) (footnotes omitted). Privity of contract is "[t]hat connection or relationship which exists between two or more contracting parties." *Black's Law Dictionary* 1199 (6th ed.1990). Privity of contract has also been defined as "the name for a legal relation arising from right and obligation," or the "legal relationship to the contract or its parties." *La Mourea v. Rhude,* 209 Minn. 53, 295 N.W. 304, 307 (1940). "In construction contracts, in the absence of an express agreement otherwise, a subcontractor is not in privity with the owner and must look to the general contractor, while the owner is liable only to the general contractor." *Jensen Constr. Co. v. Dallas County,* 920 S.W.2d 761, 772 (Tex.App.1996); *see also Waterford Condominium Ass'n v. Dunbar Corp.,* 104 Ill.App.3d 371, 60 Ill.Dec. 110, 432 N.E.2d 1009, 1011 (1982) (affirming dismissal of complaint against subcontractors for lack of privity); *Mariacher Contracting Co. v. Kirst Constr., Inc.,* 187 A.D.2d 986, 590 N.Y.S.2d 613, 614 (1992) (mem.) (reversing judgment in favor of subcontractor against landowner for lack of privity). Absent privity, a subcontractor owes no duty to a property owner. *See Grgic v. Cochran,* 689 S.W.2d 687, 690 (Mo.Ct.App.1985).

■ {13} Even if Tarin was not in privity of contract with Advanced, an issue we do not decide here given our standard of review, it might still have enforceable rights under the contract between Encinio and Advanced as a third-party beneficiary. *See Casias v. Continental Cas. Co.,* 1998–NMCA–083, ¶ 11, 125 N.M. 297, 960 P.2d 839. There

are two classes of third-party beneficiaries: intended beneficiaries and incidental beneficiaries. *See* Restatement (Second) of Contracts § 302 (1981); *Permian Basin Inv. Corp. v. Lloyd,* 63 N.M. 1, 7, 312 P.2d 533, 537 (1957) (quoting 4 Arthur L. Corbin, *Corbin on Contracts* § 776, at 18–19 (1951)); *accord Casias,* 1998–NMCA–083, ¶ 11, 125 N.M. 297, 960 P.2d 839. Only intended beneficiaries can seek enforcement of a contract. *See* Restatement (Second) of Contracts §§ 304, 315; *see also Stotlar v. Hester,* 92 N.M. 26, 30, 582 P.2d 403, 407 (Ct.App.1978). The promisor must have "had reason to know the benefit was contemplated by the promisee as one of the motivating causes for entering the contract." *Stotlar,* 92 N.M. at 30, 582 P.2d at 407. "The paramount indicator of third party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries." *Valdez v. Cillessen & Son, Inc.,* 105 N.M. 575, 581, 734 P.2d 1258, 1264 (1987). The burden is on the person claiming to be a third-party beneficiary to show that the parties to the contract intended to benefit him. *See Casias,* 1998–NMCA–083, ¶ 11, 125 N.M. 297, 960 P.2d 839. He may do so using extrinsic evidence if the contract does not unambiguously indicate an intent to benefit him. *See id.; Stotlar,* 92 N.M. at 30, 582 P.2d at 407.

**{14}** "[I]n the construction context, a property owner is ordinarily not a third-party beneficiary of a contract between the general contractor and a subcontractor." *Thomson v. Espey Huston & Assocs.,* 899 S.W.2d 415, 419 (Tex.App.1995). Certainly property owners derive benefit from the contracts between general contractors and subcontractors. But those contracts

> are made to enable the principal contractor to perform; and their performance by the subcontractor does not in itself discharge the principal contractor's duty to the owner with whom he has contracted. The installation of plumbing fixtures or the construction of cement floors by a subcontractor is not a discharge of the principal contractor's duty to the owner to deliver a finished building containing those items;

> and if after their installation the undelivered building is destroyed by fire, the principal contractor must replace them for the owner, even though he must pay the subcontractor in full and has no right that the latter shall replace them. It seems, therefore, that the owner has no right against the subcontractor, in the absence of clear words to the contrary.

4 Arthur L. Corbin, *Corbin on Contracts* § 779D, at 46–47 (1951). Thus, in the context of construction contracts, we may generally start the analysis with the idea that "[f]rom the subcontractors' perspective, as well as the general contractor's, subcontracts are intended primarily to benefit those parties rather than the property owner." *Thomson,* 899 S.W.2d at 419. However, this "presumption" is subject to challenge by appropriate proof. *See Casias,* 1998–NMCA–083, ¶ 11, 125 N.M. 297, 960 P.2d 839.

**{15}** Turning to this case, we hold that the district court erred in granting Advanced's motion to dismiss. We acknowledge that the complaint is not a paragon of clarity. It is thin on facts and fails to enumerate clearly the theories upon which Tarin seeks recovery. But that is the nature of notice pleading. *See Stock v. Grantham,* 1998–NMCA–081, ¶ 24, 125 N.M. 564, 964 P.2d 125. Although there is nothing in the complaint indicating that Advanced was in any way connected with the contract between Tarin and Encinio, it is conceivable that Tarin could prove a relationship to the contract between Encinio and Advanced sufficient to give Tarin a right to seek enforcement of the contract. The second amended complaint does allege that Tarin was a third-party beneficiary of the contract between Encinio and Advanced. Determining whether Tarin was either in privity with or a third-party beneficiary of the contract between Encinio and Advanced would require an inquiry into the terms of the contract and into the facts and circumstances surrounding its formation. Without that information it was improper to dismiss on the pleadings. *See Kirkpatrick,* 114 N.M. at 711, 845 P.2d at 805.

**{16}** Advanced argues, though, that because its agreement with Encinio was oral, there is no contract language for the

district court to look to in determining whether Tarin has a right to seek enforcement. We disagree. Certainly the lack of a written contract makes the task more difficult.

However, when construing an oral contract the words constituting the agreement are merely parts of and imbedded in a general conversation, and the meaning must be interpreted with reference to the circumstances under which the parties contracted in light of the objectives to be accomplished. In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to surrounding circumstances and course of dealing between the parties in order to ascertain their intent.

*Boyle v. Steiman,* 429 Pa.Super. 1, 631 A.2d 1025, 1033 (1993) (citation omitted). We see no reason a property owner could not, as a matter of law, be in privity with a subcontractor or be the third-party beneficiary of a contract between a general contractor and a subcontractor simply because the contract was oral. *Cf. Manor Junior College v. Kaller's Inc.,* 352 Pa.Super. 310, 507 A.2d 1245, 1246–48 (1986) (affirming dismissal but analyzing claim of third-party beneficiary status of property owner in suit against subcontractor involving oral contract).

{17} Finally, Advanced argues that a ruling in Tarin's favor would be bad public policy; that it "would upset years of contracting practices and add incalculable risks to every subcontract entered into." We think that argument assumes too much. Our ruling merely requires there to be a more thorough inquiry into the facts of this case. We do not hold that property owners are at all times and under all circumstances in privity with or third-party beneficiaries of oral contracts between general contractors and subcontractors. But to hold that a property owner could *never* have a right to seek enforcement of a contract of this kind would fly in the face of the principle of freedom of contract. *See Vidimos, Inc., v. Laser Lab Ltd.,* 99 F.3d 217, 219–20 (7th Cir.1996) (stating that if the parties to a contract make clear their intention to confer the power of

enforcement on a third party, "the concept of freedom of contract becomes a compelling ground for allowing the third party to enforce the contract"). Again, our holding is limited to the sufficiency of Tarin's complaint and does not address the merits of Tarin's underlying claims.

*Tinley's and ICSW's Motion*

{18} The joint motion that Tinley and ICSW filed was to dismiss, pursuant to Rule 1–012(B)(6) NMRA 1999, or in the alternative for summary judgment, pursuant to Rule 1–056 NMRA 1999. "If, on a [Rule 1–012(B)(6) motion], matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 1–056 ...." Rule 1–012(C) NMRA 1999. Tinley and ICSW attached portions of a deposition to the motion, and, although we cannot be sure because neither a tape nor a transcript of the motion hearing was made a part of the record on appeal, we have no reason to think the district court excluded those matters from its consideration. We therefore treat the motion as one for summary judgment. *See GCM, Inc. v. Kentucky Cent. Life Ins. Co.,* 1997–NMSC–052, ¶¶ 9, 11, 124 N.M. 186, 947 P.2d 143; *Sanders v. Estate of Sanders,* 1996–NMCA–102, ¶ 7, 122 N.M. 468, 927 P.2d 23. "When a party 'actually admit[s], for purposes of the summary judgment motion, the veracity of the allegations in the complaint,' a reviewing court should 'consider the facts pleaded as undisputed and determine if a basis is present to decide the issues as a matter of law.'" *GCM,* 1997–NMSC–052, ¶ 13, 124 N.M. 186, 947 P.2d 143 (quoting *Matkins v. Zero Refrigerated Lines, Inc.,* 93 N.M. 511, 513, 602 P.2d 195, 197 (Ct.App. 1979)) (alteration in original).

{19} The parties seem to agree that, if anything, Tarin had a license to "extract" utilities from Tinley's connections. We also agree. "Connecting with utility lines situated upon another's property is a privilege to use his land and does not create an interest in that land, and therefore, is nothing more than a license ." *Carr v. Barnett,* 580 S.W.2d 237, 241 (Ky.Ct.App.1979).

The parties' dispute is over whether Tinley and ICSW had a duty to notify Tarin before revoking his license, and whether it was necessary for Tinley and ICSW to allow Tarin to remove his personal property from the adjacent property. For purposes of our discussion we assume without deciding that Tinley could be personally liable to Tarin as an officer of ICSW (although ICSW actually owns the property on which the utility connections were made), an issue the parties contest in their briefs to this Court. *See Stinson v. Berry,* 1997–NMCA–076, ¶ 17, 123 N.M. 482, 943 P.2d 129.

{20} A license is the permission to do something on the land of another that, without permission, would be a trespass, a tort, or otherwise unlawful. *See Quantum Corp. v. State Taxation & Revenue Dep't,* 1998–NMCA–050, ¶ 10, 125 N.M. 49, 956 P.2d 848; Jon W. Bruce & James W. Ely, Jr., *The Law of Easements & Licenses in Land* ¶ 11.01 (rev. ed. 1995) (Bruce & Ely). The creation of a license requires no particular formality: "A license may be created by parol, a writing, or can be implied from the acts of the parties, from their relations, and from usage and custom." *Sammons v. American Auto. Ass'n,* 912 P.2d 1103, 1105 (Wyo.1996); *see also* Restatement of Property § 515 (1944).

{21} The most salient feature of a license is its revocability. "Generally, a license is revocable at the will or the pleasure of the servient tenant. . . . It may be revoked without notice and without cause, because . . . a licensee has no possessory interest in the property. The license may be revoked at will no matter how long it has continued." 25 Am.Jur.2d *Easements & Licenses* § 143 (1996) (footnotes omitted); *see also* Bruce & Ely, ¶ 11.06[1], at 11–14 ("As a personal privilege, a license is generally revocable at the will of the licensor."). Revocation can either be express or implied, as by conduct of the licensor that is inconsistent with the continued exercise of the privilege. *See* Bruce & Ely, ¶ 11.06[1], at 11–17. Although not an issue in this case, some courts have carved out narrow exceptions to the general rule of revocability in order to prevent inequity. *See Tatum v. Dance,* 605 So.2d 110, 112–13 (Fla.Dist.Ct.App.1992); *see also* Restatement of Property § 519. Jurisdictions are split, however, on whether licenses can become irrevocable, *see Tatum,* 605 So.2d at 112, and commentators have criticized the notion, *see* Bruce & Ely, ¶ 11 .06[2], at 11–18.

{22} As noted, however, the issue in this case is not whether Tinley and ICSW could revoke Tarin's license, but instead whether they were required to notify him of their intent to revoke and to allow him to remove his personal property from their property. The idea that a licensor must provide notice of his intent to revoke is inconsistent with the maxim that a license is revocable at will. And in an older case, our Supreme Court suggested that notice is not necessary before revocation of a license. *See Chaves v. Torlina,* 15 N.M. 53, 65, 99 P. 690, 694 (1909) (dictum). We acknowledge, however, that there is authority that indicates that a licensee may be entitled to notice of revocation under certain circumstances. *See, e.g.,* 25 Am.Jur.2d *Easements & Licenses* § 147 ("[W]here the licensee has erected structures or other improvements on the property on the faith of the license, he is entitled to reasonable notice of revocation and an opportunity to remove the improvements, if they are removable."). But we agree that "the reasonable notice required by law in such cases is only for the purpose of giving the licensee an opportunity for the removal of such personal property as he may be using on the land in connection with the enjoyment of his license." *Profile Cotton Mills v. Calhoun Water Co.,* 189 Ala. 181, 66 So. 50, 53 (1914). In other words, notice goes to the reasonableness of the opportunity a licensee is afforded to remove his personal property from the servient estate, not to the revocability of the license. *See* Restatement of Property § 519 cmt. c; *Sammons,* 912 P.2d at 1106.

{23} The parties agree that Tinley did not give Tarin notice before cutting off his utility service (either time, although Tinley argues with some force that Tarin was on constructive notice of Tinley's intent to revoke Tarin's license to acquire electricity after having to correct the improper gas connection). But as the foregoing discussion

makes clear, the only reason notice would be necessary would be to allow Tarin to remove personal property from Tinley's and ICSW's property. There is nothing in the record to indicate that Tinley and ICSW refused to allow Tarin to remove personal property from their property following revocation of Tarin's license; Tarin does not argue that he was prevented from removing the improperly installed gas pipes and electric lines. All Tarin was precluded from removing was the gas and electricity themselves, which were obviously not his personal property. Thus, Tarin failed to allege facts sufficient to support liability against either Tinley or ICSW related to Tarin's license. As such, summary judgment as to all claims based on property law concepts was proper. *See GCM*, 1997–NMSC–052, ¶ 27, 124 N.M. 186, 947 P.2d 143; *Doyle v. Peabody*, 781 P.2d 957, 961 (Alaska 1989) (holding that plaintiff was not entitled to compensation for the cost of having to sink a well on his own property after the defendant, the plaintiff's neighbor, revoked the plaintiff's license to draw water from the defendant's well.).

 {24} However, as Tarin argues on appeal, his complaint can reasonably be read to include a tort claim against Tinley. And viewing the complaint broadly, we agree that it can be interpreted to encompass a claim for prima facie tort; Tarin did allege that Tinley's actions in cutting off the utilities "were actuated by malice and with the purpose of injuring [Tarin]." *See Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990); *Beavers v. Johnson Controls World Servs., Inc.*, 120 N.M. 343, 348–51, 901 P.2d 761, 766–69 (Ct.App.1995) (discussing the elements of a prima facie tort claim). The factual situation that emerges from the sparse record before us would seem to provide at least surface support for the four elements of the tort. *See Beavers*, 120 N.M. at 348–51, 901 P.2d at 766–69. We decline to conduct a detailed analysis of the elements and their proper balance because we do not have a sufficient factual record available to us. The record does, however, raise issues of material fact sufficient to defeat a motion for summary judgment. *See* Rule 1–056. We thus reverse and remand as to Tinley on this one issue. Obviously, we do not state any views as to the merits of the case.

*CONCLUSION*

{25} The appeal is dismissed as to ICSW only for lack of a final order. The judgment of the district court granting Advanced's motion to dismiss is reversed. The court's dismissal of Tinley as a defendant is reversed as explained above. We remand for proceedings consistent with this opinion.

{26}  **IT IS SO ORDERED.**

APODACA and SUTIN, JJ., concur.