IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMCA-014

Filing Date: December 12, 2011

Docket No. 29,705

T. DAVID THOMPSON, Individually and
as the Personal Representative of the
ESTATE OF CAROLYN ROSE BENNETT,

      Plaintiff-Appellant,

v.

DOYLE D. POTTER, R.PH., and
NCS HEALTHCARE OF NEW
MEXICO, INC., a/k/a NCS
HEALTHCARE ALBUQUERQUE,

      Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY
James Waylon Counts, District Judge

Sandenaw Law Firm, P.C.
Thomas A. Sandenaw, Jr.
CaraLyn Banks
Las Cruces, NM

for Appellant

Keleher & McLeod, P.A.
Thomas C. Bird
Kathleen M. Wilson
Hari-Amrit Khalsa
Albuquerque, NM

for Appellees

OPINION

VIGIL, Judge.

1

**{1}** This case requires us to examine for the first time the nature of the duty owed by a consulting pharmacist that has contracted with a nursing facility to provide pharmaceutical services to the patients of the nursing facility. On the record before us, we hold that there is no issue of material fact and that Defendants were properly granted summary judgment on all of Plaintiff's claims.

**BACKGROUND**

**{2}** Ms. Carolyn Bennett was admitted to the Casa Arena Blanca nursing home with a diagnosis of early dementia. Upon admission, her doctor prescribed Ativan to control agitation and seizure activity commonly associated with dementia. The prescription ordered that Ativan be administered three times per day, as well as on an as-needed "prn" basis for severe agitation. Eleven months after her admission, Ms. Bennett's doctor called Casa Arena and told a nurse employed by Casa Arena to discontinue the as-needed Ativan dose. The nurse improperly transcribed the order. Instead of discontinuing the as-needed Ativan dose, the nurse discontinued the daily dose. After missing twenty-one scheduled daily doses of Ativan over a period of seven days, Ms. Bennett suffered a grand mal seizure in her bathroom at Casa Arena and fell, which resulted in a fracture to her right hip. Ms. Bennett later died.

**{3}** Plaintiff, as husband and personal representative of Ms. Bennett, sued, asserting that Ms. Bennett's seizure was caused by the sudden and abrupt withdrawal of Ativan. He did not sue the nurse who improperly transcribed the doctor's order; he did not sue the nurse's employer, Casa Arena; and he did not sue the doctor who changed the prescription. He sued NCS Healthcare of Albuquerque (NCS),[1] which was under contract with Casa Arena to provide pharmacy consultant services and pharmacy services to Casa Arena, and its registered pharmacist, Doyle Potter (Defendant). Plaintiff brought claims against NCS and Defendant for breach of contract, negligence, and negligence per se.

**{4}** Defendants filed motions for summary judgment. The district court initially denied the motions but then reconsidered and granted summary judgment in favor of Defendants on all of Plaintiff's claims. Plaintiff appeals, and we affirm. In our analysis of the issues, we discuss additional facts as necessary.

---

[1]Plaintiff actually sued Omnicare Pharmacy of New Mexico, as the successor corporation of Sunscript Pharmacy Corporation. Sunscript Pharmacy Corporation is now known as NCS Healthcare Albuquerque (NCS). After the suit was filed, the parties filed a joint pleading stating that NCS Healthcare of New Mexico, Inc. a/k/a NCS Healthcare Albuquerque and Doyle Potter are the proper Defendants.

2

**DISCUSSION**

**The District Court's Reconsideration of Defendants' Motion for Summary Judgment**

**{5}** As an initial matter, we address Plaintiff's argument that the district court erred in reconsidering Defendants' previously denied motions for summary judgment. The denial of a summary judgment motion is an interlocutory order and may be reconsidered by the district court at any time before final judgment. *Tabet Lumber Co. v. Romero*, 117 N.M. 429, 431, 872 P.2d 847, 849 (1994). Further, "[i]t is permissible to renew motions for summary judgment previously denied." *Cordova v. City of Albuquerque*, 86 N.M. 697, 705, 526 P.2d 1290, 1298 (Ct. App. 1974). To the extent Plaintiff suggests that the district court must provide a rationale for reconsidering its order, Plaintiff has failed to cite any rule or case which requires the district court to state the basis for reconsidering its denial of a motion for summary judgment. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (explaining that issues raised on appeal that are unsupported by legal authority will not be reviewed on appeal). Further, while it is certainly preferable to know the district court's basis for granting or denying a motion for summary judgment, there is no requirement that the district court state its reasons beyond a statement that no genuine issues of material fact exist, and a specification of the ground upon which summary judgment has been granted if alternative grounds seeking summary judgment have been presented. *Skarda v. Skarda*, 87 N.M. 497, 499-500, 536 P.2d 257, 259-60 (1975); Rule 1-056(C) NMRA.

**{6}** Thus, we conclude that the district court did not err in reconsidering Defendants' previously denied motions for summary judgment, and we proceed to determine whether summary judgment was properly granted on the merits.

**Standard of Review**

**{7}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id.*

**{8}** The party moving for summary judgment has the burden of establishing a prima facie case for summary judgment by presenting "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280. The burden then "shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would

3

require trial on the merits." *Id.* (internal quotation marks and citation omitted). "When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 1-056(E).

**Breach of Contract Claims**

{9}     NCS and Casa Arena entered into two contracts, a pharmacy consultant agreement in which NCS agreed "to be responsible for the general supervision of the pharmaceutical products and pharmacy services provided" to Casa Arena and a pharmacy services agreement that relates to the purchase of pharmacy products and services. Plaintiff contends that NCS violated these contracts in various ways, causing Ms. Bennett's injuries and damages. Plaintiff asserts that although Ms. Bennett was not a party to the contracts, the breach of contract claims survive because NCS and Casa Arena intended Casa Arena residents, including Ms. Bennett, to be third-party beneficiaries of the contracts. Plaintiff bases his argument on the fact that performance of the contracts results in benefits to Casa Arena residents. Conversely, Defendants argue that the contracts in plain language clearly and unambiguously express an intent to exclude any rights in third parties. Defendants specifically point to a clause in both agreements that states: "Nothing in this Agreement is intended nor will be deemed to confer any benefits on any third party." We therefore proceed to determine whether Ms. Bennett is a third-party beneficiary of the contracts.

{10}     Generally, "[o]ne who is not a party to a contract cannot sue to enforce it." *Casias v. Cont'l Cas. Co.*, 1998-NMCA-083, ¶ 11, 125 N.M. 297, 960 P.2d 839. However, "[a] third-party may have an enforceable right against an actual party to a contract if the third-party is a beneficiary of the contract." *Callahan v. N.M. Fed'n of Teachers-TVI*, 2006-NMSC-010, ¶ 20, 139 N.M. 201, 131 P.3d 51. There are two classes of potential beneficiaries to a contract, intended and incidental. *Tarin's, Inc. v. Tinley*, 2000-NMCA-048, ¶ 13, 129 N.M. 185, 3 P.3d 680. Only an intended beneficiary has a right to enforce a contract to which he is not a party. *Id.* The determination of whether a party is an intended beneficiary depends on the intent of the parties in making the contract. *Id.* Intent to benefit a third party "must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." *Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 581, 734 P.2d 1258, 1264 (1987). *Permian Basin Inv. Corp. v. Lloyd*, 63 N.M. 1, 7-8, 312 P.2d 533, 537 (1957). Incidental beneficiaries, on the other hand, are those who may derive incidental benefits from the performance of the contract but who were not intended to have rights to enforce it. Plaintiff contends that there are ambiguities in the contracts concerning whether the residents are third-party beneficiaries, and that the district court should have considered extrinsic evidence to determine whether such ambiguities existed. We take each argument in turn.

A.     **Viewing the Contract as a Harmonious Whole**

**{11}** Plaintiff argues that when viewed as a harmonious whole, the contracts between NCS and Casa Arena evidence an intent to benefit Casa Arena residents. Plaintiff argues that despite the third-party exclusionary clauses, the parties' intent is evidenced by benefits to Casa Arena residents which result from performance of the contracts. Thus, Plaintiff contends, the contracts are ambiguous as to whether the third-party exclusionary clauses include Casa Arena residents.

**{12}** Courts view the entire contract to determine if there is an ambiguity. *Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 14, 134 N.M. 558, 80 P.3d 495. A contract is ambiguous if different sections conflict or if the language of the contract is capable of more than one meaning. *Id.* We review issues of contract interpretation de novo. *See Cordova v. Bd. of Cnty. Comm'rs of Valencia Cnty.*, 2010-NMCA-039, ¶ 5, 148 N.M. 460, 237 P.3d 762, *cert. denied*, 2010-NMCERT-004, 148 N.M. 572, 240 P.3d 659.

**{13}** We have previously held that a clause in a contract specifically excluding third-party beneficiaries clearly established that the parties did not intend to grant any third-party rights under the contract. *Cobos v. Doña Ana Cnty. Hous. Auth.*, 121 N.M. 20, 25, 908 P.2d 250, 255 (Ct. App. 1995), *aff'd in part, rev'd in part on other grounds by* 1998-NMSC-049, 126 N.M. 418, 970 P.2d 1143. In *Cobos*, a tenant residing in a low-income housing project was killed by smoke inhalation as a result of the property failing to have smoke detectors. *Id.* at 21, 908 P.2d at 251. The estate argued that the deceased tenant was a third-party beneficiary of the contract between the housing authority and the rental property owner and could therefore sue for its breach. *Id.* at 24, 908 P.2d at 254. However, we concluded that the tenant was not a third-party beneficiary on the grounds that a clause in the contract stated: "Nothing in this Contract shall be construed as creating any right of the Family or other third party . . . to enforce any provision of this Contract, or to assert any claim against HUD, the PHA or the Owner under this Contract." *Id.* at 25, 908 P.2d at 255 (internal quotation marks omitted). We determined that, in spite of the fact that these types of housing assistance contracts were generally intended to benefit tenants like the decedent, the limiting clause in the contract established a clear intent to exclude any rights of a third party to enforce the contract. *Id.* We stated, "It is fundamental that if two contracting parties expressly provide that some third party who will be benefitted by performance shall have no legally enforceable right, the courts should effectuate the expressed intent by denying the third party any direct remedy." *Id.* (internal quotation marks and citation omitted).

**{14}** We conclude that *Cobos* is dispositive. NCS and Casa Arena clearly stated their intent in plain language within the contracts to deny any third-party beneficiary rights. Our public policy is to give effect to the intention of the parties, and we do not rewrite parties' agreements. *Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 23, 123 N.M. 526, 943 P.2d 560. The clear language excluding rights of third parties is not invalidated or made ambiguous by the incidental benefits received by the residents of Casa Arena. *See Flores v. Baca*, 117 N.M. 306, 310, 871 P.2d 962, 966 (1994) ("Contract liability to the promisee or third-party beneficiary for personal injuries proximately caused by misfeasance is dependent, therefore, upon the implied intent of the parties and upon the absence of an

express contract provision to the contrary."). We conclude that Ms. Bennett has no contractual enforcement rights as a third-party beneficiary of the contracts between NCS and Casa Arena.

{15} Plaintiff also relies on the termination clauses of the contracts to support the argument that Ms. Bennett was a third-party beneficiary. The termination clauses of both contracts recognize that a failure to perform by Defendant NCS to perform "creates imminent jeopardy to patient safety" at Casa Arena. We conclude as a matter of law that this recognition of the importance of proper pharmaceutical services is not sufficient by itself to override the specific provisions denying third-party beneficiary status or to create a question of fact about its efficacy.

## B.      Consideration of Extrinsic Evidence

{16} Plaintiff also argues that the district court erred in failing to consider extrinsic evidence which creates a material issue of fact about whether NCS and Casa Arena intended to grant the residents of Casa Arena third-party beneficiary rights. Plaintiff relies on *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 845 P.2d 1232 (1993), in arguing that the extrinsic evidence should have been considered for this purpose.

{17} Here, however, Plaintiff does not point to the extrinsic evidence that might establish an intent to benefit a third party to the contract, nor does Plaintiff point to any specific ambiguity in the contract. We conclude that Plaintiff failed to submit admissible relevant evidence to demonstrate an issue of material fact. The district court did not err in finding the contracts unambiguous and in granting summary judgment without considering any extrinsic evidence.

## Negligence Claim

{18} Plaintiff also asserts that summary judgment was improperly granted on his negligence and negligence per se claims. Specifically, Plaintiff contends that Defendants breached common law and statutory and regulatory duties they owed to Ms. Bennett. "It is axiomatic that a negligence action requires that there be a duty owed from the defendant to the plaintiff; that based on a standard of reasonable care under the circumstances, the defendant breached that duty; and that the breach was a cause in fact and proximate cause of the plaintiff's damages." *Romero v. Giant Stop-N-Go of N.M., Inc.*, 2009-NMCA-059, ¶ 5, 146 N.M. 520, 212 P.3d 408.

## Common Law Negligence Claim

## A.      Duty

**{19}** "Whether a duty exists is a question of law for the courts to decide[,]" which invokes de novo review on appeal. *Id.* ¶ 6. Duty may be based on common law, statutory law, or general negligence standard. *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 2007-NMCA-122, ¶ 30, 142 N.M. 583, 168 P.3d 155. "The question of the existence and scope of a defendant's duty of care is a legal question that depends on the nature of the [activity] in question, the parties' general relationship to the activity, and public policy considerations." *Edward C. v. City of Albuquerque*, 2010-NMSC-043, ¶ 14, 148 N.M. 646, 241 P.3d 1086. "To impose a duty, a relationship must exist that legally obligates a defendant to protect a plaintiff's interest, and in the absence of such a relationship, there exists no general duty to protect others from harm." *Estate of Haar v. Ulwelling*, 2007-NMCA-032, ¶ 15, 141 N.M. 252, 154 P.3d 67 (alteration, internal quotation marks, and citation omitted). The case is before us on summary judgment. We therefore proceed to examine the pertinent facts in greater detail to determine whether there are issues of fact about whether Defendants breached a duty they owed to Ms. Bennett.

**{20}** When Ms. Bennett was admitted to Casa Arena on February 9, 2004, her doctor prescribed daily doses of Ativan. Beginning in March 2004, the prescription ordered by her doctor directed that she be administered Ativan three times per day, as well as on an as-needed basis. Ms. Bennett's doctor renewed the orders for all of her medications, including the Ativan from that point forward, and from March 2004 until January 10, 2005, Ms. Bennett was given Ativan three times per day, as scheduled, as well as additional doses of Ativan on an as-needed basis.

**{21}** On January 10, 2005, a nurse employed by Casa Arena received a telephonic order from Ms. Bennett's doctor to discontinue the as-needed dose of Ativan. The nurse improperly transcribed the order. Instead of discontinuing the Ativan as-needed order, the nurse discontinued the daily Ativan dose. Beginning on January 10, 2005, until January 17, 2005, when she had the grand mal seizure and fell, Ms. Bennett did not receive the scheduled routine doses of Ativan.

**{22}** No one from Casa Arena notified Defendant of the change in the prescription, although the pharmacy services contract required Casa Arena to notify Defendant "daily of any changes in resident medication upon receipt of physicians' orders[.]" The pharmacy consultant agreement and state regulations required Defendant to go to Casa Arena once per month to review the medication regimens of each patient. *See* 16.19.4.11(B)(1)(h) NMAC (08/27/1990) (amended 06/30/2006) (requiring that the consultant pharmacist "review [the] drug regimen of each patient at least once a month"). Pursuant to these requirements, Defendant reviewed Ms. Benentt's medications on December 14, 2004, and wrote her doctor a "note to attending physician" asking whether efforts could be made to discontinue her as-needed orders for Ativan. Ms. Bennett's doctor has no record of receiving this recommendation. Defendant did not return to Casa Arena until January 18, 2005, (the day after Ms. Bennett suffered the grand mal seizure and fell) to conduct his monthly review of the patients' medication regimens. Defendant did not receive communication from Casa

Arena from December 14, 2004, to January 18, 2005, and he was not aware of any changes in Ms. Bennett's medications.

**{23}** New Mexico courts have not yet ruled on the existence or scope of a duty of consulting pharmacists to patients of a nursing facility. However, we need not reach that issue today because Plaintiff presented no evidence that Defendant had a duty or ability to control the nurse employed by Casa Arena when she made the transcription error or that Defendant had a duty or opportunity to detect the transcription error when it was made. Plaintiff presented no evidence that Defendant had a duty to monitor patients outside of the monthly review. Defendant was required to be at Casa Arena once a month to do his monthly review, and the error was made after Defendant performed his monthly review, and before he returned the following month. Further, Defendant was not informed of the change to Ms. Bennett's prescription as required by the pharmacy services contract, with the result that he was not able to take any appropriate corrective action.

**{24}** We conclude that there is no issue of material fact about whether Defendant violated any duty to Ms. Bennett based on the common law or a general negligence standard.

**B.      Voluntary Assumption of Duty**

**{25}** Nevertheless, Plaintiff argues Defendant engaged in conduct giving rise to a duty under the "voluntary assumption of duty doctrine." This doctrine declares that "[o]ne who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care." *Sanderson v. Eckerd Corp.*, 780 So. 2d 930, 931-32 (Fla. Dist. Ct. App. 2001) (quoting *Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64, 66-67 (Fla. 1996)). Florida courts have concluded there is no reason why the voluntary assumption of a duty doctrine could not be applied to a dispensing pharmacy in a proper case. *Id.* at 932; *Estate of Sharp v. Omnicare, Inc.*, 879 So. 2d 34, 37 (Fla. Dist. Ct. App. 2004). Plaintiff asks that we adopt the doctrine based on the following facts.

**{26}** The pharmacy services agreement allows a patient to choose his or her own pharmacy. On August 2, 2004, Plaintiff wrote a letter to Casa Arena "closing" Ms. Bennett's account with Defendants, and ordering, "Under no circumstances are there to be any future drug ordering attempts to N.C.S.!" A copy of the letter was sent to NCS. As we have already related, in connection with his monthly review of patient medications, Defendant made a recommendation to Ms. Bennett's doctor in a note dated December 14, 2004, that efforts be made to discontinue her as-needed orders for Ativan. Plaintiff contends that because Defendant made the recommendation, he had a duty to Ms. Bennett under the voluntary assumption of duty doctrine "because recommending modifications to Ms. Bennett's medication regime increased her risk of harm." Assuming we were to adopt the voluntary assumption of duty doctrine in relation to a consulting pharmacist, there is no evidence in the record that the recommendation, not transmitted to the doctor, and not acted upon, increased Ms. Bennett's risk of harm.

## C.       Special Relationship

**{27}**     Plaintiff argues that Defendants owed a heightened duty to protect Ms. Bennett because they had a special relationship with her.  Under New Mexico jurisprudence, special relationships "arise out of particular connections between the parties, give rise to a special responsibility, and take the case out of the general rule [that there is no general duty to aid or protect others]." *Johnstone v. City of Albuquerque*, 2006-NMCA-119, ¶ 14, 140 N.M. 596, 145 P.3d 76.  The special relationship case law in New Mexico typically involves situations where there is a supervisory or treatment relationship, or where there is direct custody and control over another.  *Id.*  "[I]n order to create a duty based on a special relationship, the relationship must include the right or ability to control another's conduct." *Estate of Haar*, 2007-NMCA-032, ¶ 23 (internal quotation marks and citation omitted).

**{28}**     The facts in this case fail to establish the control and custody elements necessary to establish a special relationship.  A consultant pharmacist has neither the right nor ability to dispense or change prescriptions without a physician's order.  *See* 16.19.11.8 NMAC(A)(2) (12/15/2002) (requiring that "[a]ll medications administered to patients shall be by direct order of a physician, or [a] licensed practitioner").  Further, facts must be presented demonstrating sufficient contact with a patient on a regular basis to establish custody or control over the patient.  *See Lester ex rel. Mavrogenis v. Hall*, 1998-NMSC-047, ¶ 7, 126 N.M. 404, 970 P.2d 590 (holding that a doctor owed no duty to third parties injured by his patient because the "taking of the drug outside of [the doctor's] control made preventative measures more difficult and reliance on professional judgment more remote").

**{29}**     Here, Defendant did not dispense or change Ms. Bennett's medications, nor did he have a contractual or other responsibility to monitor Ms. Bennett outside of a monthly review of her medication records.  *See* 16.19.4.11(B)(1)(h) NMAC.  Such a relationship is distinguishable from the typical cases establishing a special relationship due to custody, control, or a treatment relationship.  *See City of Belen v. Harrell*, 93 N.M. 601, 603, 603 P.2d 711, 713 (1979) (involving the imposition of a duty of a jailer to a prisoner because of custody and control and knowledge of prisoner's suicidal intent); *Wilschinsky v. Medina*, 108 N.M. 511, 512-13, 775 P.2d 713, 714-15 (1989) (holding that a doctor owed a duty to third parties when a powerful medication was administered to a patient in his office who then drove); *Lester*, 1998-NMSC-047, ¶ 6 (holding that a doctor who prescribed medication to a patient had no duty to third parties injured by the patient in car accident when the medication was taken out of the office).  The evidence fails to establish that Defendants had the requisite custody and control over Ms. Bennett, for us to conclude that the general relationship between Defendants and Ms. Bennett gives rise to a special relationship, resulting in a special duty to protect her from harm.

**{30}**     For the foregoing reasons, we conclude that there are no issues of material fact, and Defendants were entitled to summary judgment on Plaintiff's claim that Defendants had a special relationship with Ms. Bennett.

9

**Negligence Per Se**

**{31}**     Plaintiff argues that summary judgment was improper on his negligence per se claims because there are issues of material fact about whether Defendants violated New Mexico regulations regarding consultant pharmacists, the New Mexico Resident Abuse and Neglect Act, and Federal Medicare statutes. We disagree.

**{32}**     "[W]hen a statute imposes a specific requirement, there is an absolute duty to comply with that requirement, and no inquiry is to be made whether the defendant acted as a reasonably prudent man, or was in the exercise of ordinary care." *Heath v. La Mariana Apartments*, 2008-NMSC-017, ¶ 8, 143 N.M. 657, 180 P.3d 664 (internal quotation marks and citation omitted). Thus, negligence per se consists of the following elements:

> (1) There must be a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly, (2) the defendant must violate the statute, (3) the plaintiff must be in the class of persons sought to be protected by the statute, and (4) the harm or injury to the plaintiff must generally be of the type the [L]egislature through the statute sought to prevent.

*Alcantar v. Sanchez*, 2011-NMCA-073, ¶ 34, 150 N.M. 146, 257 P.3d 966 (alteration in original) (internal quotation marks and citation omitted). Further, the statute or regulation at issue must "define with specificity what is reasonable in a particular circumstance, such that the jury does not have to undertake that inquiry." *Heath*, 2008-NMSC-017, ¶ 9. Thus, the regulation or statute at issue must specify a duty that is distinguishable from the ordinary standard of care. *Abeita v. N. Rio Arriba Elec. Coop.*, 1997-NMCA-097, ¶ 21, 124 N.M. 97, 946 P.2d 1108. "[W]here duties are undefined, or defined only in abstract or general terms, leaving to the jury the ascertainment and determination of reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase negligence per se has no application." *Id.* (internal quotation marks and citation omitted).

**{33}**     Plaintiff has failed to present for our consideration any statute, rule or regulation directing with specificity that Defendants perform, or refrain from, actions or conduct to prevent Casa Arena's nurse from making the transcription error, to detect the transcription error when it was made, or to be informed of a doctor's change to a patient's prescription at the time it is communicated to the employee of a skilled nursing facility. Instead, the regulations impose general duties, unrelated to the specific facts of this case.

**{34}**     For example, Plaintiff asks us to consider a regulation that requires a consultant pharmacist to have the duties and responsibilities to:

> (2)     Ensure that drugs are handled in the facility in which he/she is the consultant pharmacist, in a manner that protect[s] the safety and welfare of the patient.

10

(3)     Set the policy and procedures in the facility as related to all facits [sic] of drug handling and distribution;

. . . .

(5)     [Require the consulting pharmacist's] primary goal and objective shall be the health and safety of the patient, and he/she shall make every effort to assure the maximum level of safety and efficacy in the provision of pharmaceutical services.

16.19.4.11(A) NMAC.  Plaintiff also cites a regulation requiring a pharmacy consultant agreement to specify that the consultant pharmacist has responsibilities which include the following (among others):

(c)     Monitor on a routine basis all aspects of the total drug distribution system–to be accomplished in a manner designed to monitor and safeguard all areas of the drug distribution system.

. . . .

(h)     Make routine inspections of drug storage areas, patient health records, and review drug regimen of each patient at least once a month[, r]eport irregularities, contraindication, drug interactions, etc., to the medical staff.

. . . .

(j)     Provide in-service training of staff personnel as outlined in the procedures manual.

(k)     Meet all other responsibilities of a consultant pharmacist as set forth in the Board regulations and federal or state laws and which are consistent with quality patient care.

16.19.14.11(B)(1) NMAC.

{35}     Plaintiff argues that under these regulations, "Defendants had a duty to provide consultation on all aspects of the provision of pharmacy services at Casa Arena and to make every effort to assure the maximum level of safety and efficacy in the provision of pharmaceutical services, and there are genuine disputes of material fact regarding whether Defendants breached their duties and are liable for the death of Ms. Bennett." Plaintiff's argument overlooks the fact that the majority of regulations are not sufficiently specific under New Mexico standards to support a negligence per se claim in the factual setting before us.  The one specific requirement  of the regulations requires inspection of drug

11

storage areas, health record and patient regimen "at least once a month." This requirement was echoed in the contracts between Casa Arena and NCS. Plaintiff has provided no facts that this schedule was either inadequate or not met. Thus, Plaintiff has failed to provide any basis to argue that a question of fact exists in this regard in any event.

**{36}** Plaintiff also asserts that the failure of Defendants to train the nurse who made the transcription error was negligence per se. 16.19.4.11(B)(1)(j) NMAC states, "The consultant pharmacist's agreement with the facility shall include . . . [providing] in-service training of staff personnel as outlined in the procedures manual." The pharmacy consultant agreement incorporates this requirement, which requires Defendants to provide "annual training." Assuming that this regulation is sufficiently specific to support a negligence per se claim, Plaintiff has failed to make a showing that the regulatory requirement was violated.

**{37}** The nurse who incorrectly transcribed the prescription order was in orientation when she received the call from Ms. Bennett's doctor on January 10, 2005. However, there is no evidence of when annual training was provided by Defendants, and where in that cycle the nurse was hired. Because she was in orientation, the nurse had a preceptor who would teach her and show her how to complete the form for a prescription change. Moreover, she testified that Casa Arena had a policy and procedure for documenting telephonic orders and that she followed the procedure in this case. Plaintiff suggests that there is a question about whether the nurse's preceptor was herself properly trained. However, we have not been directed to any facts that support this suggestion.

**{38}** Plaintiff's argument that there are issues of material fact about whether Defendants violated the New Mexico Resident Abuse and Neglect Act, NMSA 1978, §§ 30-47-1 to -10 (1990, as amended through 2010), and federal statutes and regulations fails because Plaintiff fails to cite to any evidence in the record that they were violated by Defendants.

**{39}** For all the reasons set forth above, we conclude that the district court properly granted summary judgment on Plaintiff's claims of negligence per se.

**CONCLUSION**

**{40}** The order of the district court granting summary judgment in favor of Defendants is affirmed.

**{41}** **IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

12

**MICHAEL D. BUSTAMANTE, Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for** _Thompson v. Potter_**, No. 29,705**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-RS | Reconsideration |
| PC-SJ | Summary Judgment |
| | |
| **CN** | **CONTRACTS** |
| CN-AM | Ambiguous Contracts |
| CN-TB | Third Party Beneficiary |
| | |
| **NG** | **NEGLIGENCE** |
| NG-DU | Duty |
| NG-NP | Negligence Per Se |
| NG-NG | Negligence, General |
| | |
| **TR** | **TORTS** |
| TR-MM | Medical Malpractice |
| TR-NG | Negligence |