This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41504**

**GUSTAVO DAVILA and GRACIELA DAVILA,**

       Plaintiffs-Appellants,

v.

**MILTON JEFF; MVT SERVICES, LLC; PENSKE TRUCK LEASING COMPANY LP; OEP HOLDINGS, LLC; MVT LEASING, LLC; and JOHN DOES 1-10,**

       Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Casey Fitch, District Court Judge**

Grayson Law Office, LLC
Brian G. Grayson
Albuquerque, NM

Moss Legal Group, PLLC
Andrew J. Armijo
M. Mitchell Moss
El Paso, TX

Federick Mandell
El Paso, TX

for Appellants

Mayer LLP
Brian J. Fisher
Moses B. Winston
Albuquerque, NM

Andrew J. Upton

Dallas, TX

for Appellees

**MEMORANDUM OPINION**

**WRAY, Judge.**

**{1}**     Plaintiffs, Gustavo Davila and Graciela Davila, appeal the district court's order granting summary judgment in favor of Defendants Milton Jeff (Jeff), MVT Services, LLC, OEP Holdings, LLC, Penske Truck Leasing Co. L.P., MVT Leasing, LLC, and John Does 1-10 (collectively, Defendants). We agree with the district court's rulings that: (1) Plaintiffs were required to but did not provide expert testimony to establish either (a) causation for the tire disablement,[1] or (b) the standard of care asserted by Plaintiffs for responding to a commercial vehicle tire disablement;[2] and (2) the statutes identified by Plaintiffs to support the claim for negligence per se did not meet the required criteria. As a result, we affirm.

**DISCUSSION**

**{2}**     Because this is a memorandum opinion, we discuss the facts only to the extent necessary to resolve the appellate issues that Plaintiffs raise in this Court. On appeal, we review orders granting summary judgment de novo. *See Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 9, 335 P.3d 1243. We "examine the whole record on review" and "consider[] the facts in a light most favorable to the nonmoving party." *See id.* Summary judgment is only "appropriate in the absence of any genuine issues of material fact and where the movant is entitled to judgment as a matter of law." *Id.* Nevertheless, in the context of our de novo review, it remains "the appellant's burden to demonstrate, by providing well-supported and clear arguments, that the district court has erred." *Premier Tr. of Nev., Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261. We address each of the district court's rulings in turn.

**I.     Summary Judgment: Negligence Claims**

---

1 The parties use the term "tire disablement" to describe the event that caused damage to a tire on the commercial motor vehicle that Jeff was operating.

2We observe that in the district court, Plaintiffs made several different arguments in relation to the standard of care after a tire disablement. We restrict our analysis to the articulation of the standard of care that Plaintiffs have advanced on appeal. *See City of Sunland Park v. Santa Teresa Servs. Co.*, 2003-NMCA-106, ¶ 81, 134 N.M. 243, 75 P.3d 843 (treating arguments raised in the district court that are not asserted on appeal as abandoned). We further caution this is a memorandum opinion prepared for the benefit of the parties to address only the arguments that the parties have raised. This opinion should not be read to analyze or approve any issue not explicitly discussed. *See Maralex Res., Inc. v. Gilbreath*, 2003-NMSC-023, ¶ 21, 134 N.M. 308, 76 P.3d 626 ("[C]ases are not authority for propositions not considered.").

**{3}** Plaintiffs argue that under New Mexico law, expert testimony was not required to "establish negligence" under the facts and circumstances of this case.[3] *See Zamora*, 2014-NMSC-035, ¶ 22 (identifying the elements of a negligence claim as duty, breach of a standard of care, injury, and that "the breach of duty as [a] cause of the injury"); *see also* UJI 13-305 NMRA (explaining that "a 'cause' of injury . . . need not be the only explanation for the injury"). The district court found that expert testimony was required to establish (1) causation as to "the actual cause of the tire disablement," and (2) "the standard of care of commercial motor vehicle drivers in response to a tire disablement, including any obligations relating to retrieving tire debris from a freeway."[4] We first consider the need for expert testimony regarding causation in the present case.

## A.    Causation and Expert Testimony

**{4}** Plaintiffs argue that expert testimony is not required "in the accident context where an average person can determine causation by resort to common knowledge that an average person ordinarily possesses." This Court has previously explained that "[i]f the act involves the use of specialized knowledge or skill to make a judgment call as to the appropriate thing to do or not do, expert testimony will likely be needed to assess the resultant act or failure to act" and "[i]f not, expert testimony is not required." *Richter v. Presbyterian Healthcare Servs.*, 2014-NMCA-056, ¶ 22, 326 P.3d 50. Plaintiffs do not explain what evidence the jury would apply its "common knowledge" to in order to determine that Jeff's alleged negligence in inspecting the truck tires caused the tire disablement. Plaintiffs provided evidence that Jeff did not conduct an appropriate tire check before driving, that appropriate checks can avoid certain types of tire disablement, a tire disablement occurred, and an injury resulted. Multiple witnesses testified that vehicle inspections before driving were important for safety and that tire pressure was a component of preventing tire disablements. But Plaintiffs point to no evidence to show that an appropriate check of tire pressure would have likely prevented the tire disablement in the present case—or even more generally, that tire disablements do not normally occur absent negligent tire checks. *See* UJI 13-1623(2) NMRA (requiring the plaintiff who is attempting to establish negligence by circumstantial evidence to prove "that the event causing the injury or damage . . . was of a kind which does not ordinarily occur in the absence of negligence"). The district court determined

---

[3] Plaintiffs' arguments focus on Jeff's negligence, and as the district court noted (and Plaintiffs do not dispute on appeal), the claims against the remaining Defendants rely on Plaintiffs establishing a case against Jeff. We therefore focus on the claims against Jeff with the understanding that whether those claims survive summary judgment dictates the fate of the remaining claims.

[4] Plaintiffs also fault the district court for relying on nonbinding and inapplicable precedent. It is clear that the district court considered *Velasquez v. EAN Holdings, LLC*, No. 3:17-CV-1656-BH, 2018 WL 5924037 (N.D. Tex. Nov. 13, 2018) (mem. & order), and *Orozco v. Bd. of Cnty. Comm'rs*, A-1-CA-40246, mem. op. (N.M. Ct. App. Jan. 30, 2023) (nonprecedential), not as binding precedent but as persuasive authority containing helpful reasoning that informed and guided the district court's analysis. We find no error in the district court's use of *Velasquez* and *Orozco*. *See CIT Grp./Equip. Fin., Inc. v. Horizon Potash Corp.*, 1994-NMCA-116, ¶ 6, 118 N.M. 665, 884 P.2d 821 ("When New Mexico cases do not directly answer the question presented, we look for guidance in analogous law in other states or the federal system."); *Breen v. Carlsbad Mun. Schs.*, 2005-NMSC-028, ¶ 14, 138 N.M. 331, 120 P.3d 413 ("Federal case law is certainly informative, but only to the extent it is persuasive."); *see also* Rule 12-405(A) NMRA (permitting consideration of memorandum opinions for persuasive value).

that Plaintiffs were required to present expert testimony on causation, specifically regarding a cause of the tire disablement because it "involves matters beyond the realm of layperson understanding." Under these circumstances, we agree with the district court that a witness with specialized knowledge or skill would be required to link the evidence that Jeff performed insufficient tire checks to the tire disablement. *See id.*

{5}     Plaintiffs maintain that expert testimony was not required because "an ordinary citizen is familiar with highways and cars" and for support, cite *Romero v. State*, 1991-NMCA-042, 112 N.M. 291, 814 P.2d 1019, *aff'd in part*, *rev'd in part*, 1991-NMSC-071, 112 N.M. 332, 815 P.2d 628. In *Romero*, this Court considered whether the district court properly admitted expert testimony about the cause of a single-vehicle accident involving a safe speed, intoxicated passengers, a curve in a road that was familiar to the driver, and dry and daylight conditions. *Id.* ¶¶ 1, 2, 35. The plaintiff argued in part that the road was dangerous. *Id.* ¶ 14. No eyewitness testified, and as a result, "[t]he jury was required to determine the causes of the accident by reviewing circumstantial evidence." *Id.* ¶ 36. The defendants offered expert testimony that other factors likely contributed to the crash, including low tire pressure, passenger interference, and driver inattentiveness. *Id.* ¶ 35. This Court explained that

> [e]xpert testimony was not necessary for the jury to reach a verdict. Automobiles and highways are sufficiently familiar to the ordinary citizen that in general we would not *require* a finding of, say, causation to be predicated on an expert opinion that a particular factor was a probable cause of the accident. The purpose of expert testimony in this type of case is to assist the jury to understand how factors supported by evidence could contribute to the accident. Although the expert witness may also have sufficient expertise, based on training and experience, to testify to a probable sequence of events or a probable cause of the accident, such expert testimony is not a necessary predicate for testimony concerning how particular factors could contribute to an accident.

*Id.* ¶ 36 (citations omitted). In the context of *Romero*, an expert could testify that sunlight on foliage could reduce visibility on a roadway, but a jury would be able to draw "such an inference" with or without expert testimony. *Id.* ¶ 37. While Plaintiffs quote *Romero* for the general proposition that "[a]utomobiles and highways are sufficiently familiar to the ordinary citizen," *see* 1991-NMCA-042, ¶ 36, they do not explain how the common experience of the driving public translates to a reasonable inference that an inadequate tire check more likely than not resulted in a tire disablement on a commercial truck, *see Richter*, 2014-NMCA-056, ¶ 22. Under *Richter*, we conclude that expert testimony was necessary under the circumstances to help the jury evaluate Jeff's "judgment call" based on specialized knowledge or skill regarding the risks associated with an inadequate tire check on a commercial motor vehicle. *See id.*; *cf. Springer Corp. v. Dallas & Mavis Forwarding Co.*, 1976-NMCA-130, ¶ 13, 90 N.M. 58, 559 P.2d 846 (holding in the context of products liability, that circumstantial evidence was insufficient to establish a tire defect, in the absence of expert testimony addressing causation).

## B.    The Standard of Care and Expert Testimony

**{6}**    For the second negligence issue, Plaintiffs argue that the district court applied the wrong standard of care to evaluate the evidence related to Jeff's response to the tire disablement. This Court has explained that "[w]here a 'duty' exists, it generally requires that the defendant's conduct conform to the same standard of care—that of a reasonable person under the same or similar circumstances, usually referred to as the 'ordinary care' standard." *Oakey, Est. of Lucero v. May Maple Pharmacy, Inc.* (*Oakey*), 2017-NMCA-054, ¶ 23, 399 P.3d 939. If, however, "the defendant is a professional, the duty imposed by law is not the requirement to exercise 'ordinary care' under the same or similar circumstances but to apply the knowledge, care, and skill of reasonably well-qualified professionals practicing under similar circumstances." *Id.* ¶ 25 (internal quotation marks and citation omitted). Usually, the professional standard of care must be established by expert testimony. *Id.*; *see* Rule 11-702 NMRA (providing that an expert is a witness qualified by "knowledge, skill, experience, training, or education" to "testify in the form of an opinion").

**{7}**    The district court determined that "Plaintiffs were required, but failed, to present expert testimony regarding the standard of care of commercial motor vehicle drivers in response to a tire disablement, including any obligations relating to retrieving tire debris from a freeway." Plaintiffs argue that a jury, without expert testimony, may determine "what would constitute an exercise of ordinary care in light of all the surrounding circumstances." *See Pollock v. State Highway & Transp. Dep't*, 1999-NMCA-083, ¶ 11, 127 N.M. 521, 984 P.2d 768 (internal quotation marks and citation omitted). Defendants maintain that a professional standard of care applies under the circumstances and expert testimony was therefore required.

**{8}**    We have explained that whether expert testimony is necessary depends on the particular negligent act at issue. For some cases, whether negligence is a cause of an accident is within the realm of knowledge of an ordinary driver. *See Romero*, 1991-NMCA-042, ¶ 36. In other cases, technical expertise is required to understand whether negligence is a cause of an accident. *Cf. Richter*, 2014-NMCA-056, ¶ 22 (considering expert testimony in the medical negligence context). So, too, for the standard of care. In some cases, whether a driver breached a standard of ordinary care is within the understanding of an average juror. In others, whether a commercial driver breached the standard of care for licensed operators of commercial trucks requires expert testimony. *Cf. Oakey*, 2017-NMCA-054, ¶¶ 25, 35. Thus, it is key for the plaintiff to identify the type of "judgment call" that the defendant allegedly made negligently. *See Richter*, 2014-NMCA-056, ¶ 22; *see also* UJI 13-1603 NMRA ("What constitutes 'ordinary care' varies with the nature of what is being done."). On appeal, Plaintiffs' only theory with respect to Jeff's reaction to the tire disablement is that he breached the standard of ordinary care when he negligently did not "look for or locate the blown tire which caused . . . Plaintiffs' accident." This articulation of the alleged negligent act relates to a commercial tire disablement, which according to the officer who responded to Plaintiffs' request for assistance, caused "big tire" debris weighing "at least 60, 70 pounds" to come off of Jeff's truck. It is not clear to us that such circumstances are faced by ordinary drivers or

that an ordinary driver, under such circumstances, would generally be required to reverse course and "look for or locate" the large, heavy debris on an interstate, as Plaintiffs contend. For that reason, Plaintiffs have not persuaded us that an average juror could determine whether the standard of care was breached under the theory they articulate on appeal. *See Hall v. City of Carlsbad*, 2023-NMCA-042, ¶ 5, 531 P.3d 642 (providing that "[o]n appeal, there is a presumption of correctness in the rulings and decisions of the district court," and thus "it is the appellant's burden to persuade us that the district court erred" (internal quotation marks and citation omitted)). As a result, we cannot say the district court erred in concluding that expert testimony was required to establish, based on "specialized knowledge" or skill, *see* Rule 11-702, whether it would have been a breach of the standard of care for commercial truck drivers to not look for or locate the tire. *See Richter*, 2014-NMCA-056, ¶ 22.

## II.    Summary Judgment: Negligence Per Se

**{9}**    Plaintiffs argue that the district court should have denied Defendants' motion for summary judgment related to Plaintiffs' negligence per se claims. Negligence per se claims consist of four elements:

> (1) There must be a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly, (2) the defendant must violate the statute, (3) the plaintiff must be in the class of persons sought to be protected by the statute, and (4) the harm or injury to the plaintiff must generally be of the type the Legislature through the statute sought to prevent.

*Thompson v. Potter*, 2012-NMCA-014, ¶ 32, 268 P.3d 57 (alteration, internal quotation marks, and citation omitted). To establish the specific duty, Plaintiffs point to NMSA 1978, Section 65-3-9(F) (1989) (requiring the "director" to "adopt regulations not inconsistent with or more stringent than applicable federal safety standards concerning the following parts and accessories necessary for the safe operation of a commercial motor carrier," including "tires and wheels"), and NMSA 1978, Section 30-8-4(A)(1) (2018) (defining and criminalizing littering). Plaintiffs maintain that these statutes require "Defendants to ensure that their vehicles have safe tires and to refrain from littering in any manner." The district court determined that Section 65-3-9 does not establish a sufficiently specific duty under the present circumstances and that Section 30-8-4 was not intended to address the harm that Plaintiffs suffered. We address each statute in turn.

**{10}**    Section 65-3-9, a provision of the Motor Carrier Safety Act (the MCSA), NMSA 1978, §§ 65-3-1 to -14 (1989, as amended through 2023), does not establish a duty "with specificity" regarding what "is reasonable in a particular circumstance." *See Thompson*, 2012-NMCA-014, ¶ 32 (internal quotation marks and citation omitted); *see also Cobb v. Gammon*, 2017-NMCA-022, ¶ 43, 389 P.3d 1058 ("Negligence per se exists only where a statutory or regulatory provision imposes an absolute duty to comply with a specific requirement."). The Legislature established that "[t]he purpose of the

[MCSA] is to protect the New Mexico traveling public by ensuring the safe operation of commercial motor carrier vehicles on New Mexico's highways." Section 65-3-2. The MCSA further "requires the adoption of 'rules and regulations concerning the systematic inspection, repair and maintenance of all commercial motor carrier vehicles.'" *Hernandez v. Grando's LLC*, 2018-NMCA-072, ¶ 14, 429 P.3d 1259 (quoting Section 65-3-12). Nevertheless, Section 65-3-9(A) does not impose an absolute duty of compliance such that if a commercial truck driver, like Jeff, violated the statute, the jury would not need to "evaluate the factual circumstances of the particular case to determine whether [Jeff] acted reasonably." *See Heath v. La Mariana Apartments*, 2008-NMSC-017, ¶¶ 8-9, 143 N.M. 657, 180 P.3d 664. Section 65-3-9 does not impose a specific duty on Jeff as a commercial truck driver at all. Instead, Section 65-3-9 only requires the secretary of public safety to adopt regulations "not inconsistent with or more stringent than applicable federal safety standards concerning the [listed] parts and accessories necessary for the safe operation of a commercial motor carrier." *See* NMSA 1978, § 65-1-2(G), (S) (2015) (defining the terms "director" and "secretary" for use in the Motor Transportation Act, which includes the MCSA, *see* NMSA 1978, § 65-1-1 (1989)). As a result, Section 65-3-9 does not impose a specific standard of conduct that would support a negligence per se claim against Jeff.

**{11}**     Section 30-8-4, the littering statute, also does not support a claim for negligence per se because the harm to Plaintiffs was not "of the type the Legislature through the statute sought to prevent." *See Thompson*, 2012-NMCA-014, ¶ 32 (alteration, internal quotation marks, and citation omitted). Under Section 30-8-4(A)(1), "[l]ittering consists of discarding refuse . . . on public property in any manner other than by placing the refuse in a receptacle provided for the purpose by the responsible governmental authorities or otherwise in accordance with lawful discretion." Plaintiffs assert that the plain meaning of the words "in any manner" is "broad and expansive, and . . . necessarily includes tire debris on public roadways that place the public at a higher risk of danger." The statutory definition of "refuse," however, suggests that by criminalizing littering, the Legislature did not intend to protect the public from danger. The Legislature proscribed inappropriately discarding "refuse," *see* § 30-8-4(A)(1), and defined "refuse" as "any article or substance: . . . which is commonly discarded as waste; or . . . which, if discarded on the ground, will create or contribute to an unsanitary, offensive or unsightly condition," Section 30-8-3(A), (B). Thus, the littering statute is intended to prevent the improper deposit of commonly discarded waste or other refuse that would create or contribute to unsanitary, offensive, or unsightly conditions on public property—not to protect the public from debris on the road. *Cf. Archibeque v. Homrich*, 1975-NMSC-066, ¶¶ 3, 15, 16, 88 N.M. 527, 543 P.2d 820 (considering the language of a traffic statute and the circumstances of a traffic accident to conclude that it was "doubtful that the statute could have been intended by the [L]egislature to apply to a situation such as this" and affirming the district court's refusal of a negligence per se jury instruction). We therefore agree with the district court that under the circumstances, Section 30-8-4 did not properly form the basis for a negligence per se claim.

**CONCLUSION**

**{12}**    We affirm.

**{13}    IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**ZACHARY A. IVES, Judge**